# EXHIBIT A

23126607

CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
cbaker@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California St., Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax:  (415) 366-2525

Attorneys for Plaintiffs
VEEVA SYSTEMS INC. AND PETER STARK

**F I L E D**
ALAMEDA COUNTY

SEP 2 - 2021

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VEEVA SYSTEMS INC. and PETER STARK<br><br>                              Plaintiffs,<br><br>                    vs.<br><br>IQVIA INC.<br><br>                              Defendant. | Case No.  **RG21111679**<br><br>**COMPLAINT**<br><br>**CAUSES OF ACTION FOR DECLARATORY JUDGMENT AND UNFAIR COMPETITION** |

## I.      INTRODUCTION

1.      Defendant IQVIA Inc. continues to use unlawful restrictive covenants to trap its employees, thus preventing them from seeking better work in greener pastures, including in California.  These restrictive covenants harm employees, competitors, and the public.  They violate: (1) California law, and (2) the laws of Delaware, New Jersey, New York, Connecticut, and North Carolina ("Sister State Laws").  To the extent the Sister State Laws recognize or enforce these restrictive covenants, the Sister State Laws violate the dormant Commerce Clause.  Among other things, if the Sister State Laws validated the restrictive covenants, the laws would impose unconstitutional barriers to interstate commerce and cause economic balkanization.

Filed By Fax

2.     This complaint seeks relief under California's Declaratory Judgment Act and Unfair Competition Law.  The complaint is  related to *Veeva Systems Inc. v. Medidata Solutions, Inc, QuintilesIMS Incorporated (now IQVIA), and Sparta Systems, Inc.*, Case No. RG17868081, which is also pending in this Court before the Honorable Stephen Kaus.

## II.     PARTIES AND JURISDICTION

3.     Plaintiff Veeva Systems Inc. is a Delaware corporation headquartered in Pleasanton, California.  It is a leader in cloud-based software for the life sciences industry.

4.     Plaintiff Peter Stark is an IQVIA employee who resides in New Jersey and who has had regular contact with the state of California through his employment with IQVIA.

5.     Defendant IQVIA Inc., a wholly-owned subsidiary of IQVIA Holdings, Inc., is a Delaware corporation headquartered in Durham, North Carolina and Danbury, Connecticut. IQVIA provides information services and technology to the life sciences industry.  IQVIA does significant business with California-based customers and has significant California operations. IQVIA was previously known as QuintilesIMS or IMS.  For ease of reference, Defendant is referred to in this Complaint as IQVIA, its most recent name.

6.     IQVIA sells certain products and services that are competitive with certain of Veeva's products and services.  IQVIA and Veeva also have numerous common customers, and each sometimes enters into third party agreements with the other for the benefit of common customers.  Through these third party agreements, Veeva, on occasion, authorizes IQVIA to access Veeva data products and software (including the Veeva CRM solution), and IQVIA, on occasion, authorizes Veeva to access IQVIA data products.  Veeva is also a direct supplier of IQVIA with respect to Veeva software.

7.     IQVIA and Veeva also compete for employees.

## III.     FACTS

### California's Life Sciences Industry

8.     California, through the innovation and effort of its people, universities, policies, and laws, has created and seeks to maintain a vibrant and growing life sciences industry.  The state hosts more than 3,700 life sciences companies that have more than 1300 new therapies

- 2 -

1  seeking regulatory approval, including 455 medicines to treat cancer.  There are more than 8500

2  clinical trials being conducted in California.   Each year, California's life sciences industry

3  generates approximately $190B in revenue, and pays more than $40B in wages and more than

4  $17B in federal, state, and local taxes.  Prominent pharmaceutical companies based primarily in

5  California include Amgen, Genentech, Gilead, Allergan Irvine, and Jazz Pharmaceuticals.

6  California also has significant biotech hubs in San Diego and Silicon Valley.

7       9.       Veeva and IQVIA both conduct significant business with California's life

8  sciences industry.

9                            **Peter Stark**

10      10.      From 2002 to 2010, Peter Stark worked as a senior director for Sanofi, S.A., a

11  multi-national pharmaceutical company.  From 2010 to 2016, he worked as the Chief Executive

12  Officer of Thoughtshift/Pursuit Solutions ("Pursuit"), a marketing firm that provided marketing

13  services to pharmaceutical companies, including those in California.

14                    **The Acquisition and 2016 NCA/NDAs**

15      11.      In 2016, Pursuit was acquired by IQVIA.  As part of this acquisition, Stark signed

16  a "Restrictive Covenant Agreement" that included a five year non-compete clause, a five year

17  non-solicitation clause, and never-ending confidentiality and non-disparagement clauses (the

18  "Acquisition NCA/NDA").[1]  The five-year term for the non-compete and non-solicitation

19  provisions of the Acquisition NCA/NDA expired in January 2021.  The Acquisition NCA/NDA

20  has a Delaware choice of law provision.

21      12.      Because Stark became employed by IQVIA when it acquired Pursuit, IQVIA

22  required him to sign a second "Proprietary Rights and Restrictive Covenant Agreement." (the

23  2016 NCA/NDA).  The 2016 NCA/NDA contains a one-year, post-termination, non-compete

24  clause, a one-year, post-termination, non-solicitation clause, and never-ending confidentiality

25  and non-disparagement clauses.  The 2016 NCA/NDA has a New Jersey choice of law provision.

26                            **The 2017 NCA/NDA**

27  _____

[1] The appellate court in the *Veeva Systems Inc. v. QuintilesIMS (IQVIA)* (Cal.App. 2019) 2019
28  WL 5654387 refers to non-compete/non-disclosure/non-disparagement provisions, collectively,
as NCA/NDAs.  This complaint does the same.

13.     In 2017, IQVIA required Stark to sign a standard "Confidentiality and Restrictive Covenants Agreement" (the "2017 NCA/NDA").  While the 2017 NCA/NDA was nominally in exchange for certain compensation, the agreement itself makes clear that it was a condition of Stark's continued employment with IQVIA.

14.     The 2017 NCA/NDA superseded all prior NCA/NDAs except the Acquisition NCA/NDA.  Alternatively, IQVIA intends the 2017 NCA/NDA to be the most protective of IQVIA's interests and thus the operative NCA/NDA.

15.     The 2017 NCA/NDA was signed by Stark within New Jersey.  On information and belief, it was signed on behalf of IQVIA within New York (the location of its Chief Human Resources Officer).  The agreement contains a Delaware choice of law provision.

16.     Stark has had extremely limited contacts with the State of Delaware, personal or professional, during the course of his employment with IQVIA.

17.     As detailed below, the 2017 NCA/NDA contains world-wide, one-year, post-termination non-compete and non-solicitation clauses, as well as never-ending confidentiality and non-disparagement clauses.

*a. The Post-Termination Non-Compete*

18.     The non-compete clause in the 2017 NCA/NDA prohibits competition in three distinct ways for a one year period (i.e., the "Restricted Period"). It prohibits Stark from directly or indirectly performing or providing:

a.  "Services" for any "Competitor" that competes with a "Company Offering" with which the employee performed "Services" in the past twelve months.

b.  "Services" for any "Competitor" that competes with a "Company Offering" for which the employee had access to "Confidential Information" in the past twelve months; or

c.  "Services" for any "Person" [not just Competitors] that is likely to result in the use or disclosure of any "Confidential Information."

19.     "Confidential Information" is defined to mean "information that is confidential or proprietary to the Company or Third Parties," regardless of when or how the information was or

- 4 -

is received or created.  All that matters is the information "is not generally disclosed by the Company or Third Parties or otherwise publicly available, and which may be useful or helpful to the Company or Third Parties and may give the Company or Third Parties a competitive advantage."

20.     "Third Parties" means any of IQVIA's customers, suppliers, or partners.  Veeva, as well as many of Veeva's customers, are Third Parties under the plain language of the 2017 NCA/NDA.

21.     "Services" means direct or indirect "assistance, support, or services," including "the providing of advice, support, knowledge, information or recommendations, labor . . . any other performance, rendering or delivery of individual work or assistance."

22.     "Company Offering" means the Company's past, present, future, or contemplated services or products.

24.     "Competitor" means any Person [non-Company entity or individual] "that is then either directly or indirectly planning to develop, or developing, providing, offering, selling, or supporting any product or service competitive, in whole or in part, with any Company Offering."

25.     "Person" means any non-IQVIA person or entity.

### b. The Post-Termination Non-Solicitation Clause

26.     The non-solicitation clause prohibits solicitation of customers, suppliers, employees, and consultants in four distinct ways during the Restricted Period.  It states that Stark must not, directly or indirectly, endeavor to or actually, "solicit, induce, entice, [procure, hire, engage, employ, or use]:"

a.      any actual or prospective customer or data supplier of IQVIA with whom the employee had contact, or about which the employee had access to "Confidential  Information," in order to sell or obtain products or services that are the same, similar to, or related to, the products or services IQVIA offered to or acquired in the market during the employee's employment.

b.      any actual or prospective customer or data supplier to change its business relationship with IQVIA.

1         c.      any employee or consultant of IQVIA to leave IQVIA.

2         d.      any current or former "Person" if doing so would result in a breach of that

3                 Person's [similarly unlawful] restrictive covenants with the Company.

4 *c. The Never-Ending Confidentiality Clause*

5     27.      The confidentiality clause prohibits the use or disclosure of "Confidential

6 Information" (as defined above), except for Internal or External Disclosure and Use. The

7 exceptions with respect to disclosure and use are narrowly-defined. Specifically:

8         a.      "Internal Disclosure or Use" means employees may share or discuss

9                 "Confidential Information" with individuals within the Company only on

10                 a need-to-know basis if necessary for those individuals to properly

11                 perform their jobs or contracted responsibilities.

12         b.      "External Disclosure or Use" means employees may disclose

13                 "Confidential Information" to someone outside IQVIA only if three

14                 conditions are met: (i) the disclosure furthers IQVIA's legitimate business

15                 purposes; (ii) the intended recipient has signed an approved non-disclosure

16                 agreement; and (iii) the disclosed information is appropriately designated

17                 as confidential.

18     28.      The confidentiality clause expressly prohibits the employee from using

19 "Confidential Information" for the benefit of themselves or any third party.

20     29.      The confidentiality clause lasts forever and survives the employee's separation

21 from IQVIA's employ.

22 *d. The Never-Ending Non-Disparagement Clause*

23     30.      The non-disparagement clause prohibits, not just competition, but also protected

24 employee speech. It prohibits the employee from: (1) making statements or representations; (2)

25 communicating; or (3) taking any action "that may, directly or indirectly, disparage or be

26 damaging to, not just IQVIA, but also "any of its officers, directors, employees, advisors,

27 businesses, or its or their reputations."

28     31.      The non-disparagement clause, like the confidentiality clause, lasts forever and

COMPLAINT

1   survives the employee's separation from IQVIA's employ.

2   **The Saving Clauses**

3        32.     The restrictive covenants in IQVIA's NCA/NDAs are overbroad, oppressive,

4   vague, unenforceable and illegal under California and the Sister State Laws.  The covenants are

5   also inequitable and entirely unnecessary to further any of IQVIA's legitimate business interests.

6   The covenants, for example, effectively prohibit employees from ever competing with IQVIA

7   (because competition is an action that might "damage" IQVIA) and from ever using ill-defined

8   "confidential information" that belongs, not to IQVIA, but to Veeva and IQVIA's other suppliers

9   and customers, regardless of when or how the employee learns of the information.

10        33.     IQVIA knows its NCA/NDAs are illegal, but it relies on the *in terrorem* effect of

11   the covenants to restrain competition and prevent employees from engaging in protected

12   conduct.  In the event employees are inadequately terrorized, IQVIA relies on "savings clauses"

13   in its NCA/NDAs in the hope that a court will rewrite their overbroad, oppressive, vague, illegal

14   and unenforceable terms.  For example:

15             a.     One savings clause in the 2017 NCA/NDA states that, to the extent the

16                  non-compete or non-solicitation provisions "are in violation of applicable

17                  federal, state, or other local law . . . such provisions are deemed void and

18                  not applicable."

19             b.     A second savings clause – titled "Severability" – states that "if any

20                  provision of this Agreement is, for any reason, held to be invalid or

21                  unenforceable, the other provisions of this Agreement will remain

22                  enforceable and the invalid or unenforceable provision will be deemed

23                  modified so that it is valid and enforceable to the maximum extent

24                  permitted by law."  This clause further states that, to the extent the non-

25                  compete or non-solicitation clauses are "judicially determined to be

26                  unenforceable, a court of competent jurisdiction may reform any such

27                  provision to make it enforceable."

28        34.     The saving clauses do not save the restrictive covenants.  A court of equity should

- 7 -

1  not rewrite obviously illegal agreements in an effort to further an employer's anti-competitive

2  scheme.  Alternatively, these clauses establish that Stark's upcoming employment with Veeva

3  does not violate any of the IQVIA restrictive covenants because the covenants, if applied to

4  Stark's employment with Veeva, would violate California and/or the Sister State Laws.

5                                                      ***

6         35.     The Acquisition, 2016, and 2017 NCA/NDAs have effectively locked Stark into

7  his employment with IQVIA since January 2016.  He could not leave and work in his chosen

8  profession without risking a violation of the covenants.

9         36.     On information and belief, and as part of its ongoing anti-competitive scheme,

10 IQVIA has required numerous employees to sign NCA/NDAs that are the same as, or similar to,

11 the NCA/NDAs signed by Stark.

12                          **Stark's Employment with IQVIA**

13        37.     From 2016 to 2018, Stark was employed by IQVIA as its head of multi-channel

14 marketing.  From 2018 to June 2021, Stark was employed by IQVIA as a Vice President and

15 General Manager of Omnichannel Marketing.  "Omnichannel" – or "every channel" – describes

16 an advertising strategy.  It encompasses the different ways (or channels) through which a

17 company can contact its audience:  Examples of "channels" include television, websites, social

18 media, face-to-face, etc.   In the life sciences space, the audience is typically consumers of

19 pharmaceuticals or healthcare providers that prescribe pharmaceuticals.

20        38.     IQVIA's Omnichannel Marketing Department helps pharmaceutical companies

21 determine what marketing (or advertising) works best for increasing the sale of their products.  It

22 leverages data to which IQVIA has access – including customer data and pharmacy data – to

23 give advice on how to tailor the company's marketing efforts among different channels.

24        39.     In performing his work for IQVIA, Stark primarily relied on his general skills,

25 experience, and education.  However, and like virtually every other job involving information

26 technology, Stark and his team had access to and used non-public information from IQVIA, its

27 customers, suppliers, partners, and others during the course of their work.  For example,

28 IQVIA's Omnichannel Marketing group has used customer data housed within *Veeva's* CRM

- 8 -

1    solution to provide marketing services to its customers.

2        40.    In June 2021, Stark became IQVIA's Vice President and General Manager of

3    Marketing.  However, his focus has continued to be on the Omnichannel Marketing Group.

4        41.    In his job with IQVIA, Stark had regular contact with California customers like

5    Gilead, Genentech, and Amgen, as well as numerous smaller biotech companies based in San

6    Diego and Silicon Valley.  Stark regularly traveled to California, visiting for days at time,

7    throughout his IQVIA employment.  California was and remains a focus of IQVIA's business

8    efforts because of California's thriving life sciences industry.  IQVIA receives the benefits of

9    California's economy and laws, but seeks to avoid its California responsibilities.

10                    **Stark's Recruitment and Hiring by Veeva**

11        42.    In or around June 2021, Veeva began efforts to recruit Stark for employment with

12    Veeva.  Its Chief Executive Officer sent a text to Stark from California, the CEO's home state.

13    Over the next two months, Veeva's CEO recruited Stark from California through telephone calls,

14    video conferences, and text messages that were sent from, or originated within, California.

15        43.    Because of IQVIA's NCA/NDAs, Stark retained and sought legal advice from

16    Kublanovsky Law LLC, based in New York, and Baker Curtis & Schwartz, P.C., based in

17    California, with respect to his potential departure from IQVIA and potential employment with

18    Veeva.  To date, Stark has incurred fees due Kublanovsky, and Veeva, consistent with California

19    Labor Code § 2802, has incurred fees due Baker that were incurred on Stark's behalf.  Veeva's

20    California-based General Counsel has also expended considerable time and resources with

21    respect to the recruitment and hiring of Stark because of the IQVIA NCA/NDAs.

22        44.    On September 1, 2021, Veeva offered Stark a job as its Executive Vice President

23    of Commercial Strategy.  Stark's employment with Veeva will begin on January 3, 2022 at

24    Veeva's Pleasanton, California headquarters.  Veeva expects that Stark will work frequently

25    within the geographic boundaries of California during the term of his Veeva employment.  His

26    direct manager, the CEO, resides in California.  Much of Stark's anticipated Veeva team also

27    resides in California.  As explained in his offer letter, his employment relationship with Veeva is

28    governed by California law.  Regardless of where Stark physically works, he will have ongoing

COMPLAINT

and consistent contacts with his California-based co-workers, vendors, partners, and customers.

45.     Regardless of where he formally resides, Stark's contacts with California will be such that he is and will be entitled to the protections of California law with respect to his employment with Veeva.

46.     As part of Veeva's offer to Stark, and because of IQVIA's NCA/NDAs, Veeva has agreed to indemnify Stark for any losses he might incur as a result of his departure from IQVIA and his employment with Veeva.  In addition, Stark's employment with Veeva will not begin until January 3, 2022.  Moreover, during the "Restricted Period" set forth in the NCA/NDAs, Veeva does not plan to assign Stark management responsibility for its Crossix measurement and optimization business.

47.     On September 2, 2021, Stark accepted the job offer from Veeva.  On September 2, 2021, he informed his IQVIA superior that he was resigning from IQVIA and intended to begin work for Veeva on or around January 3, 2022.  He also removed the capacity of his personal iPhone to access IQVIA's network, including his IQVIA email.  As a cautionary measure, Stark is also  delivering his personal iPhone, iPad, and computer to his attorneys to ensure that all IQVIA-related information that is protected from disclosure or use by law, that may inadvertently reside on these devices, is removed.  He has purchased a new iPhone as a result, a loss for which Veeva has agreed to indemnify him.

48.     Veeva and Stark have suffered injury in fact and loss of property because of IQVIA's NCA/NDAs.

## IV.   CAUSES OF ACTION

49.     In light of the above facts, Veeva and Stark assert the following causes of action against IQVIA.

///

///

///

///

///

- 10 -

# FIRST CAUSE OF ACTION

## DECLARATORY RELIEF CONCERNING

## RECRUITMENT OF STARK AND OTHER IQVIA EMPLOYEES

## (BY VEEVA)

50.     An actual case or controversy exists over Veeva's right to recruit Stark and other current and former IQVIA employees in light of the fact that they have signed standard NCA/NDAs the same as or similar to those referenced above.  Veeva, as a competitor and supplier of IQVIA, and as a business that shares common customers with IQVIA, has an interest in these NCA/NDAs because they inhibit Veeva's ability to fairly compete for employees.

*California Law*

51.     California Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void.  Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

52.     California has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects.  California also has a strong interest in supporting, maintaining and growing its life sciences industry.  California employers have a strong and legitimate interest in having broad freedom to choose from a national applicant pool in order to maximize the quality of the products or services they provide.

53.     Veeva contends it is protected in its recruitment of IQVIA's employees, including Stark, to provide services to Veeva in California within the meaning of California law notwithstanding the NCA/NDAs referenced above.  IQVIA disagrees.

*Sister State Laws*

54.     Similar to California (if to a lesser extent), the Sister State Laws -- i.e., those of Delaware, New Jersey, New York, Connecticut, and North Carolina – also place strict limitations on restrictive covenants of the sort required by IQVIA.  The Sister States also have a strong

- 11 -

1  interest in protecting employers, employees, and the public from the harms arising from IQVIA's

2  unlawful restraints of trade.

3      55.    To the extent a Sister State Law applies to the present dispute, Veeva contends it is

4  protected by this Sister State Law in its recruitment of Stark for employment  by Veeva.  IQVIA

5  disagrees.

6                                    *Dormant Commerce Clause*

7      56.    The dormant Commerce Clause establishes a constitutional free trade policy to aid

8  interstate commerce.  Among other things, it declares unconstitutional barriers to interstate trade

9  that adversely affect the ability of businesses to recruit out-of-state personnel.

10     57.    To the extent a Sister States Law would validate or enforce the NCA/NDAs

11 referenced above, Veeva contends such law would, as applied to the present dispute, violate the

12 dormant Commerce Clause.  IQVIA disagrees.

13     58.    For these reasons, Veeva seeks a declaratory judgment finding that Veeva has and

14 had the right to solicit IQVIA's employees for employment, including Stark, in accordance with

15 the above facts and law.

16                            **SECOND CAUSE OF ACTION**

17            **DECLARATORY RELIEF CONCERNING IQVIA'S NCA/NDAs**

18                              **(BY VEEVA AND STARK)**

19     59.    An actual case or controversy exists over IQVIA's right to require employees,

20 including Stark, to sign NCA/NDAs that violate California law, a Sister State Law, and/or the

21 dormant Commerce Clause.  Veeva, as a competitor and supplier of IQVIA with respect to certain

22 services, products and employees, and as a business that shares common customers with IQVIA,

23 has an interest in these NCA/NDAs.  Stark, as a signatory, also has an interest in these

24 NCA/NDAs.

25                                    *California Law*

26     60.    Business and Professions Code § 16600 renders every contract in restraint of trade

27 void.  The Cartwright Act renders any combination in restraint of trade unlawful and void.

28

Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

61.     California has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects. California also has a strong interest in supporting, maintaining and growing its life sciences industry. California employers have a strong and legitimate interest in having broad freedom to choose from a national applicant pool in order to maximize the quality of the product or services they provide.

62.     Plaintiffs contend California law applies to Stark's upcoming employment with Veeva and that, under California law, the NCA/NDAs are illegal and invalid. Alternatively, Plaintiffs contend that, because California law applies to Stark's employment with Veeva, the NCA/NDAs themselves exclude Stark's employment with Veeva from their scope. IQVIA disagrees with these contentions.

*Sister State Laws*

63.     Similar to California (if to a lesser extent), the Sister State Laws -- i.e., those of Delaware, New Jersey, New York, Connecticut, and North Carolina – also place strict limitations on restrictive covenants of the sort required by IQVIA. The Sister States also have a strong interest in protecting employers, employees, and the public from the harms arising from IQVIA's unlawful restraints of trade.

64.     To the extent a Sister State Law applies to the present dispute, Plaintiffs contends the NCA/NDAs are illegal and invalid under such Sister State's Law or, alternatively, Stark's employment with Veeva is excluded from the scope of the restrictive covenants under such Sister State Law. IQVIA disagrees.

*Dormant Commerce Clause*

65.     The dormant Commerce Clause establishes a free trade policy with respect to interstate commerce. Among other things, it declares unconstitutional barriers to interstate trade that adversely affect the ability of businesses to recruit out-of-state personnel.

- 13 -

66.     To the extent a Sister State Law would enforce or validate the NCA/NDAs referenced above, and restrain Stark's employment with Veeva, Plaintiffs contends such law would, as applied to the present dispute, violate the dormant Commerce Clause.  IQVIA disagrees.

67.     For these reasons, Plaintiffs seeks a declaratory judgment ruling that the NCA/NDAs referenced above are illegal, unenforceable, and/or that Stark's upcoming employment with Veeva does not violate these NCA/NDAs.

## THIRD CAUSE OF ACTION

## UNFAIR COMPETITION CONCERNING

## RECRUITMENT OF IQVIA'S EMPLOYEES, INCLUDING STARK

## (BY VEEVA)

68.     Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void. Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600, the Cartwright Act, and other laws, unfair and unlawful business practices.

69.     IQVIA engages in unfair competition when its requires employees, including Stark, to enter into the NCA/NDAs of the type referenced above in order to deter the recruitment and movement of its current and former employees.

70.     As detailed above, Veeva has suffered injury in fact as a result of IQVIA's unfair competition.

71.     IQVIA's conduct must be enjoined.

## FOURTH CAUSE OF ACTION

## UNFAIR COMPETITION ARISING FROM

## IQVIA's NCA/NDAS

## (BY VEEVA AND STARK)

72.     Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void.

- 14 -

1  Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions

2  Code § 16600, the Cartwright Act, and other laws, unfair and unlawful business practices.

3      73.     IQVIA engages in unfair competition when its requires employees, including

4  Stark, to enter into the NCA/NDAs of the type referenced above.  The NCA/NDAs harm

5  competition, employees, competitors, and the public.

6      74.     As detailed above, Plaintiffs have suffered injury in fact as a result of IQVIA's

7  unfair competition.

8      75.     IQVIA's conduct must be enjoined.

9                          **PRAYER FOR RELIEF**

10  WHEREFORE, Plaintiffs pray for judgment against IQVIA as follows:

11  1.     Declaratory judgment.

12  2.     Appropriate injunctive relief ancillary to the declaratory judgment.

13  3.     Appropriate injunctive relief under California's unfair competition law, including,

14  but not limited to, a public injunction prohibiting IQVIA from requiring its employees to enter

15  into NCA/NDAs of the type referenced above.

16  4.     An award of reasonable attorneys' fees and costs;

17  5.     All such other and further relief that the Court may deem just and proper.

18

19  Dated:  September 2, 2021                  BAKER CURTIS & SCHWARTZ, P.C.

20

21  By: _____

22             Chris Baker
           Attorneys for Plaintiffs
           VEEVA SYSTEMS, INC. AND PETER STARK

23

24

25

26

27

28

COMPLAINT

# EXHIBIT B

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Chris Baker, 181557
Baker Curtis & Schwartz, P.C.
I California Street, Suite 1250
San Francisco, CA 94111
TELEPHONE NO.: (415) 9696502
ATTORNEY FOR *(Name)*: Plaintiff

23126340

**FILED**
ALAMEDA COUNTY

SEP 0 7 2021

CLERK OF ___ SUPERIOR COURT
By ___
JANIE THOMAS, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, Alameda County
1225 Fallon Street, #109
Oakland, CA 94612-4293

PLAINTIFF/PETITIONER: Veeva Systems Inc., et al.

DEFENDANT/RESPONDENT: IQVIA Inc.

CASE NUMBER:

RG21111679

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:

15

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:

Summons, Complaint, Notice of Related Case

3. a. Party served: IQVIA Inc.

   CSC - Koy Saechao - Person Authorized to Accept Service of Process

   2710 Gateway Oaks Drive, Suite 150N
   Sacramento, CA 95833

5. I served the party
   a. **by personal service.**
      receive service of process for the party (1) on (date): 09/03/2021          (2) at (time): 1:55PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

   IQVIA Inc.
   under: CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:          Tyler Anthony DiMaria
   b. Address:        One Legal - P-000618-Sonoma
                      1400 North McDowell Blvd, Ste 300
                      Petaluma, CA 94954

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 40.00
   e I am:
        (3) registered California process server.
             (i) Employee or independent contractor.
             (ii) Registration No.: 2006-06
             (iii) County: Sacramento

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 09/03/2021

Tyler Anthony DiMaria
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 16860474

# EXHIBIT C

1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    MARCIA L. POPE SBN 124878
2   MARC H. AXELBAUM SBN 209855
    ATHENA G. RUTHERFORD SBN 328824
3   Four Embarcadero Center, 22nd Floor
    San Francisco, CA 94111-5998
4   Telephone: 415.983.1000
    Facsimile: 415.983.1200
5

6   Attorneys for Defendant IQVIA Inc.

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  | VEEVA SYSTEMS INC. AND PETER | Case No. _____ |
    | STARK | |
12  | | [Alameda County Superior Court, Case No. |
    | Plaintiffs, | RG21111679] |
13  | | |
    | vs. | DECLARATION OF ATHENA G. |
14  | | RUTHERFORD IN SUPPORT OF |
    | IQVIA INC. | NOTICE OF REMOVAL OF ACTION |
15  | | PURSUANT TO 28 U.S.C. §§ 1331, 1441 |
    | Defendant. | (FEDERAL QUESTION) |
16

17

18

19

20

21

22

23

24

25

26

27

28
                                    1

I Athena G. Rutherford, declare and state as follows:

1.     I am a member of the State Bar of California and this Court and a member of the law firm of Pillsbury Winthrop Shaw Pittman LLP, counsel for defendant IQVIA Inc. ("IQVIA" or "Defendant") in this matter. I make this declaration in support of Defendant's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1331, 1441 (Federal Question).

2.     On October 4, 2021, at my direction, Defendant filed an Answer to Veeva Systems Inc. and Peter Stark (collectively "Plaintiffs") Unverified Complaint (the "Complaint") in Alameda Superior Court, for Case No. RG21111679. A true and correct copy of the Answer is attached hereto as **Exhibit 1**. A true and correct copy of the confirmation of receipt of the filing is attached as **Exhibit 2**.

3.     I am informed and believe that due to the current COVID-19 restrictions on courthouse operations, Plaintiffs will not receive a conformed copy of the Answer for approximately three to four weeks.

4.     IQVIA's deadline to submit their notice of Removal is Monday October 4, 2021, prior to the anticipated date by which Plaintiffs will receive a copy of the Answer.

5.     Upon receipt of a conformed copy of the Answer, I shall amend Defendant's Notice of Removal to include a copy of the conformed Answer in due haste.


I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 4th day of October 2021 in San Francisco, California.

Dated:  October 4, 2021                    PILLSBURY WINTHROP SHAW PITTMAN LLP



                                                                 *Athena Rutherford*
                                                  By:     ATHENA G. RUTHERFORD
                                                           Attorneys for Defendant
                                                           IQVIA INC.

2

EXHIBIT 1

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARCIA L. POPE SBN 124878
MARC H. AXELBAUM SBN 209855
ATHENA G. RUTHERFORD SBN 328824
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200
.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| VEEVA SYSTEMS INC. AND PETER STARK<br><br>                              Plaintiffs,<br><br>      vs.<br><br>IQVIA INC.<br><br>                              Defendants. | Case No. RG21111679<br><br>**DEFENDANT IQVIA'S ANSWER TO VEEVA SYSTEMS AND PETER STARK'S COMPLAINT**<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>Judge:        TBD<br>Dept.:        TBD |

IQVIA ("Defendant") answers the unverified Complaint ("Complaint"), filed on September 2, 2021 by Peter Stark and Veeva Systems, Inc. ("Plaintiffs"), as follows:

## **GENERAL DENIAL**

1.        Pursuant to Code of Civil Procedure section 431.30, Defendant generally and specifically denies each and every allegation of the unverified Complaint, and further denies, generally and specifically, that Plaintiffs' have been injured in any way by Defendant, or any of its officers, directors, agents, or employees, and denies that any equitable or other relief is due and owing from Defendant to Plaintiffs or that Plaintiffs are entitled to any damages or other relief whatsoever.

/ / /

/ / /

## AFFIRMATIVE DEFENSES

By way of affirmative defenses to the allegations of the Complaint, Defendant avers as follows:

## FIRST AFFIRMATIVE DEFENSE

1.      The Complaint, and each purported cause of action contained therein, fails to state a claim because California law does not apply to the substantive facts at issue. The acts or omissions that allegedly give rise to Plaintiffs' claims occurred outside California and were not otherwise governed by California law. Additionally, the two non-compete and non-disclosure agreements (the "NCA/NDAs") identified in the Complaint to which IQVIA was allegedly a party were neither entered into nor performed in California, and they contain Delaware choice of law provisions. On information and belief, the NCA/NDAs were signed by an IQVIA employee who, at all relevant times, lived and worked in New Jersey.

## SECOND AFFIRMATIVE DEFENSE

2.      The Complaint, and each purported cause of action therein, is barred, in whole or in part, by the dormant Commerce Clause (Art. I, § 8, cl. 3) and the Full Faith and Credit Clause (Art. IV, § 1) of the U.S. Constitution, and other sovereignty and federalism principles of federal law. The application of California law to regulate contracts in other states, entered into by out-of-state employees with out-of-state employers, violates principles of state sovereignty, arrogates the legislative prerogatives of other states to the California judiciary, and exceeds the court's jurisdiction. The practical effect of applying California law to all NCA/NDAs, regardless of where and when they are entered, performed, or enforced, whenever a contracting party subsequently works for a company that has corporate offices, headquarters, or operations within California, would be to deny other states the ability to control contractual relationships and economic activity occurring within their own borders, and would effectively impose a national law not passed by Congress.

## THIRD AFFIRMATIVE DEFENSE

3.      The Complaint, and each purported cause of action contained therein, is barred in whole or in part, because the California laws cited therein do not apply extraterritorially.

Case No. RG21111679

DEFENDANT IQVIA'S ANSWER TO PETER STARK AND VEEVA'S COMPLAINT

**FOURTH AFFIRMATIVE DEFENSE**

4.      The Complaint, and each purported cause of action therein, including Plaintiffs' requests for relief, are barred, in whole or in part, by the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States and the Due Process Clause of Article I, section 7 of the California Constitution. The California laws at issue in the Complaint, as interpreted and sought to be applied by the Plaintiffs, are unduly vague and subjective, permit retroactive, random, arbitrary, and capricious punishment, and fail to provide adequate notice as to what might constitute a violation of the law.

**FIFTH AFFIRMATIVE DEFENSE**

5.      The Complaint, and each purported cause of action therein, including Plaintiffs' requests for relief, is barred, in whole or in part, by the First Amendment to the Constitution of the United States and the Liberty of Speech Clause of Article I, section 2 of the California Constitution.

**SIXTH AFFIRMATIVE DEFENSE**

6.      The Complaint, and each purported cause of action contained therein, is barred, in whole or in part, because at all relevant times, any actions by Defendant were privileged pursuant to Civil Code section 47.

**SEVENTH AFFIRMATIVE DEFENSE**

7.      Any relief based on the allegations of the Complaint is barred because any such relief would contravene Defendant's rights to equal protection under the law and to petition the courts for relief. Plaintiffs ask the Court to invalidate prior contracts legally entered between consenting parties under valid law, and prevent Defendant from entering into lawful contracts and from seeking to protect or enforce its contractual rights anywhere in the United States.

**EIGHTH AFFIRMATIVE DEFENSE**

8.      The Complaint is barred because Defendant's alleged acts or omissions respecting the matters alleged in the Complaint were based on independent and legitimate business justifications, and any actions by Defendant resulted from a good faith effort to protect its confidential and proprietary information and goodwill, and were not the result of any contract,

DEFENDANT IQVIA'S ANSWER TO PETER STARK AND VEEVA'S COMPLAINT

4812-7489-1517

combination, or conspiracy in restraint of trade between Defendant and any other person or entity.

**NINTH AFFIRMATIVE DEFENSE**

9.     The Complaint, and each purported cause of action therein, is barred, in whole or in part, to the extent it is based on alleged acts, conduct or statements that are permitted by law. The causes of action for violation of California Business and Professions Code Section 17200 et seq. are specifically barred by the safe harbor provided by Defendant's compliance with federal and/or state laws and regulations. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Plaintiffs' claims concern alleged acts, conduct, or statements which occurred outside of California and in states where such acts, conduct, or statements were legal.

10.     New Jersey resident Mr. Stark executed the relevant NCA/NDAs in New Jersey. The choice of law provisions in the relevant NCA/NDA agreement which Mr. Stark signed applies Delaware law.[1]

11.     Delaware authority holds that covenants not to compete are enforceable and not mechanically applied as the courts engage in "a careful evaluation of the specific facts and circumstances presented." *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del. Ch. 1987).

**TENTH AFFIRMATIVE DEFENSE**

12.     The First, Second, Third, and Fourth Causes of Action are barred, in whole or in part, because Plaintiffs cannot establish a predicate act by Defendant sufficient to maintain a cause of action under Business and Professions Code Section 17200 et seq.

**ELEVENTH AFFIRMATIVE DEFENSE**

13.     By reason of its actions, representations, conduct and/or omissions to act, Plaintiffs are estopped from asserting and have waived each and every purported cause of action for relief against Defendant alleged in the Complaint.

**TWELFTH AFFIRMATIVE DEFENSE**

14.     The Complaint, and each purported cause of action contained therein, is preempted

---

[1] Mr. Stark signed a 2016 NCA/NDA with a New Jersey choice of law provision—this agreement was superseded by an NCA/NDA he later signed in 2017 with a Delaware choice of law provision.

4812-7489-1517

by federal law – specifically, the Commerce Clause of the United States Constitution and the Cartwright Act (California's principal state antitrust law which reflects similar concepts as the federal Sherman Act) because adjudication of the scope, validity and applicability of IQVIA's contractual provisions entered into with employees who later work go to work for Veeva, but are not otherwise subject to California law, necessarily requires application and analysis of federal constitutional principles.

### THIRTEENTH AFFIRMATIVE DEFENSE

16.    The First and Second Causes of Action for declaratory relief are barred because declaratory relief is not necessary or proper under the circumstances alleged in the Complaint under California Code of Civil Procedure Section 1061.

### FOURTEENTH AFFIRMATIVE DEFENSE

17.    The Complaint, and each purported cause of action therein, is barred, in whole or in part, and judicial abstention is appropriate, because this action requires the court to assume a legislative function and the equitable relief sought would be unnecessarily burdensome for the court to monitor and enforce.

### FIFTEENTH AFFIRMATIVE DEFENSE

18.    Plaintiffs have adequate remedies at law and are therefore not entitled to equitable relief. Plaintiffs plead Mr. Stark and Veeva's injuries-in-fact as: "lost property" and IQVIA precluding Mr. Stark from "leav[ing] and work[ing] in his chosen profession without risking a violation of the covenants."

### SIXTEENTH AFFIRMATIVE DEFENSE

19.    The equities in this case weigh against the relief that Plaintiffs seek. The nature of the injuries complained of by Mr. Stark and Veeva are redressable without resorting to injunctive relief. Plaintiffs' injuries of "lost property" and the alleged forgoing of opportunities on behalf of Mr. Stark are quantifiable and therefore redressable through remedies at law.

20.    In addition, should Plaintiffs' injunctive relief be granted, IQVIA would be harmed and proscribed from protecting essential confidential information known by former employees who go to work for Veeva.

### SEVENTEENTH AFFIRMATIVE DEFENSE

21.     The Complaint does not seek monetary relief in the form of damages, restitution, or disgorgement. To the extent Plaintiffs later seeks such relief, or any other monetary recovery, such relief would unjustly enrich Plaintiffs and is therefore barred.

### EIGHTEENTH AFFIRMATIVE DEFENSE

22.     The Complaint does not allege or seek damages, nor can damages be recovered under the causes of action alleged in the Complaint, but to the extent Plaintiffs contend that its allegations entitle it to restitutionary or other monetary relief, the amounts Plaintiffs allege to have incurred are too remote or speculative to allow recovery, and it is impossible to ascertain and allocate such alleged amounts with reasonable certainty.

### NINETEENTH AFFIRMATIVE DEFENSE

23.     Although discovery has not yet commenced, Plaintiffs may be barred in whole or in part from recovery by reason of its failure to mitigate any harm to it, if in fact any injury has been sustained. Any recovery by Plaintiffs must be reduced or barred by reason thereof. Plaintiffs plead it recruits former IQVIA employees in spite of its knowledge that IQVIA employees at times sign NCA/NDAs. Discovery may yield additional facts relevant to this affirmative defense.

### TWENTIETH AFFIRMATIVE DEFENSE

24.     Each cause of action fails to state facts sufficient to support an award of damages for attorneys' fees, expert witness fees, and other litigation fees, costs, and expenses.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

25. The Complaint, and each purported cause of action contained therein, fail to state facts sufficient to constitute any cause of action against Defendant.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

26.     Defendant presently has insufficient knowledge or information upon which to form a belief as to whether Defendant may have other, as yet unstated, affirmative defenses available. Therefore, Defendant reserves the right to assert additional affirmative defenses in the event that discovery or any other investigation indicates that they would be appropriate.

/ / /

4812-7489-1517

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for judgment as follows:

(a)    That judgment be awarded in favor of Defendant and against Plaintiffs and that the Complaint be dismissed in its entirety with prejudice;

(b)    That Plaintiffs take nothing by way of its Complaint;

(c)    That Defendant be awarded its costs and attorneys' fees as allowed by law; and

(d)    For such other and further relief as the Court deems just and proper.


Dated:  October 4, 2021                                    PILLSBURY WINTHROP SHAW PITTMAN LLP


                                                                    *Athena Rutherford*
                                            By:    ——————————————————
                                                    MARCIA L. POPE
                                                    MARC H. AXELBAUM
                                                    ATHENA G. RUTHERFORD
                                                    Attorneys for the Defendant
                                                    IQVIA INC.

DEFENDANT IQVIA'S ANSWER TO PETER STARK AND VEEVA'S COMPLAINT

4812-7489-1517

EXHIBIT 2



**Superior Court of California**
*County of Alameda*

Superior Court of California, County of Alameda          Receipt Nbr: 817469
Hayward Hall of Justice                                   Clerk: jrose
24405 Amador Street                                       Date: 10/04/2021
Hayward, CA  94544

---

Type          Case Number       Description                              Amount

---

Filing        RG21111679        Initial Appearance                      $435.00


              Total Amount Due:      $435.00
              Prior Payment:
              Current Payment:       $435.00
              Balance Due:              $.00
              Overage:
              Excess Fee:
              Change:

Payment Method:
              Cash:
              Check:                 $435.00



FILE BY FAX

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARCIA L. POPE SBN 124878
MARC H. AXELBAUM SBN 209855
ATHENA G. RUTHERFORD SBN 328824
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200
.

ENDORSED
FILED
ALAMEDA COUNTY

OCT 0 4 2021

CLERK OF THE SUPERIOR COURT
BY: Joshua T.N. Rose Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

VEEVA SYSTEMS INC. AND PETER STARK

                        Plaintiffs,

        vs.

IQVIA INC.

                        Defendants.

Case No. RG21111679

**DEFENDANT IQVIA'S ANSWER TO VEEVA SYSTEMS AND PETER STARK'S COMPLAINT**

ASSIGNED FOR ALL PURPOSES TO:
Judge:        TBD
Dept.:        TBD

IQVIA ("Defendant") answers the unverified Complaint ("Complaint"), filed on September 2, 2021 by Peter Stark and Veeva Systems, Inc. ("Plaintiffs"), as follows:

### GENERAL DENIAL

1.      Pursuant to Code of Civil Procedure section 431.30, Defendant generally and specifically denies each and every allegation of the unverified Complaint, and further denies, generally and specifically, that Plaintiffs' have been injured in any way by Defendant, or any of its officers, directors, agents, or employees, and denies that any equitable or other relief is due and owing from Defendant to Plaintiffs or that Plaintiffs are entitled to any damages or other relief whatsoever.

/ / /

/ / /

FILE BY FAX

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARCIA L. POPE SBN 124878
MARC H. AXELBAUM SBN 209855
ATHENA G. RUTHERFORD SBN 328824
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200

ENDORSED
FILED
ALAMEDA COUNTY

OCT 0 4 2021

CLERK OF THE SUPERIOR COURT
BY Joshua F. Rose   Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VEEVA SYSTEMS INC. AND PETER STARK<br><br>                       Plaintiffs,<br><br>    vs.<br><br>IQVIA INC.<br><br>                     Defendants. | Case No. RG21111679<br><br>**PROOF OF SERVICE VIA MAIL AND EMAIL OF DEFENDANT IQVIA'S ANSWER TO VEEVA SYSTEMS AND PETER STARK'S COMPLAINT**<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>Judge:     TBD<br>Dept.:      TBD |

4839-0090-9821

# EXHIBIT D

23126608

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Chris Baker (SBN 181557) // Deborah Schwartz (SBN 208934)
Baker Curtis & Schwartz, 1 California St., #1250, San Francisco, CA 94111

| | |
|---|---|
| TELEPHONE NO.: (415) 433-1064 | FAX NO. (Optional): (415) 366-2525 |

E-MAIL ADDRESS: cbaker@bakerlp.com // dschwartz@bakerlp.com

ATTORNEY FOR (Name): Plaintiffs VEEVA SYSTEMS INC. AND PETER STARK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Veeva Systems Inc. and Peter Stark v. IQVIA Inc.

**F I L E D**
ALAMEDA COUNTY
SEP 2 - 2021
CLERK OF THE SUPERIOR COURT
By

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | RG21111679 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [x] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint (not specified above) (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition (not specified above) (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [ ] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify):
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: September 2, 2021
Chris Baker
_____
(TYPE OR PRINT NAME)                                          ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

Filed By Fax

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                      CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**



23126606

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*



F I L E D
ALAMEDA COUNTY

SEP 2 - 2021

CLERK OF THE SUPERIOR COURT
B._____
_____, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
IQVIA Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Veeva Systems Inc. and Peter Stark

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Alameda County Superior Court 1225 Fallon Street, Oakland, CA 94612 | CASE NUMBER: *(Número del Caso):* **RG21111679** |
| --- | --- |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Chris Baker, Baker Curtis & Schwartz, 1 California St., #1250, San Francisco, CA 94111, (415) 433-1064

| DATE: **SEP 2 2021** *(Fecha)* | Clerk, by **Chad Finke** *(Secretario)* | , Deputy *(Adjunto)* |
| --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

23126609

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Chris Baker (SBN 181557) // Deborah Schwartz (SBN 208934)
Baker Curtis & Schwartz, P.C.
1 California Street, Suite 1250
San Francisco, CA 94111
TELEPHONE NO.: (415) 433-1064    FAX NO. *(Optional):* (415) 366-2525
E-MAIL ADDRESS *(Optional):* cbaker@bakerlp.com // dschwartz@bakerlp.com
ATTORNEY FOR *(Name):* Plaintiffs Veeva Systems Inc. and Peter Stark

**F I L E D**
ALAMEDA COUNTY

SEP 2 - 2021

CLERK OF THE SUPERIOR COURT
By_____
Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

PLAINTIFF/PETITIONER: Veeva Systems Inc. and Peter Stark

DEFENDANT/RESPONDENT: IQVIA Inc.

CASE NUMBER:
**RG21111679**

JUDICIAL OFFICER:

**NOTICE OF RELATED CASE**

DEPT.:

---

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Veeva Systems Inc. v. Medidata Solutions, Quintiles IMS (nka IQVIA Inc.) and Sparta Systems

   b. Case number: RG17868081

   c. Court: [✓] same as above

      [ ] other state or federal court *(name and address):*

   d. Department: 19

   e. Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

   f. Filing date: July 17, 2017

   g. Has this case been designated or determined as "complex?" [ ] Yes [✓] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      [✓] involves the same parties and is based on the same or similar claims.

      [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      [ ] involves claims against, title to, possession of, or damages to the same property.

      [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         [ ] Additional explanation is attached in attachment 1h

   i. Status of case:

      [✓] pending

      [ ] dismissed [ ] with [ ] without prejudice

      [ ] disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: [ ] same as above

      [ ] other state or federal court *(name and address):*

   d. Department:

Page 1 of 3

*Filed By Fax*

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courtinfo.ca.gov*

CM-015

| PLAINTIFF/PETITIONER:   Veeva Systems Inc. and Peter Stark | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  IQVIA Inc. | |

2. *(continued)*

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

3.  a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address):*

    d. Department:

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: September 2, 2021

Chris Baker
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ *(signature)*
_____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER:  Veeva Systems Inc. and Peter Stark | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: IQVIA Inc. | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service.  The notice must be served on all known parties in each related action or proceeding.)*

1.  I am at least 18 years old and **not a party to this action.**  I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

     1 California Street, Suite 1800, San Francisco, CA 94111

2.  I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
    a. ☑ deposited the sealed envelope with the United States Postal Service.
    b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3.  The *Notice of Related Case* was mailed:
    a.  on *(date):* September 2, 2021
    b.  from *(city and state):* San Francisco, CA

4.  The envelope was addressed and mailed as follows:

    a. Name of person served:
       CSC (IQVIA's agent for SOP)
       Street address: 2710 Gateway Oaks Dr, 150N
       City: Sacramento
       State and zip code: CA 95833

    c. Name of person served:

       Street address:
       City:
       State and zip code:

    b. Name of person served:

       Street address:
       City:
       State and zip code:

    d. Name of person served:

       Street address:
       City:
       State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: September 2, 2021

Deborah Schwartz
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

## *Superior Court of California, County of Alameda*



## *Notice of Assignment of Judge for All Purposes*

Case Number: RG21111679
Case Title:     Veeva Systems Inc VS Iqvia Inc
Date of Filing: 09/02/2021

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| **Judge:** | **Dennis Hayashi** |
| **Department:** | **518** |
| **Address:** | **Hayward Hall of Justice** |
| | **24405 Amador Street** |
| | **Hayward  CA  94544** |
| **Phone Number:** | **(510) 690-2727** |
| **Fax Number:** | **(510) 267-1585** |
| **Email Address:** | **Dept518@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

Courtesy copies of all law and motion papers shall be delivered directly to Department 518.

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY

OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

## General Procedures

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO<br>
JUDGE Dennis Hayashi<br>
DEPARTMENT 518

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1)  and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days".  Plaintiff received that form in the ADR information package at the time the complaint was filed.  The court's website also contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

Email is the best method of communicating with court staff. Email address for counsel or self-represented litigants must be listed in the caption of all filed papers, as required by CRC 2.111(1). All email communications must be copied to all parties for whom an email address is available. Pleadings/documents shall not be transmitted via email.

## Schedule for Department 518

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held:  Court Trials:  Monday through Friday; 8:45 a.m. to 1:00 p.m.

- Jury Trials:  Monday through Friday; 8:45 a.m. to 1:00

- Case Management Conferences are held:  Mondays, Tuesdays and Fridays at 2:30 p.m.

- Law and Motion matters are heard:  Wednesdays and Thursdays at 2:30 p.m.

- Settlement Conferences are heard:  As scheduled by the judge.

- Ex Parte matters are heard:  Wednesdays and Thursdays at 2:30 p.m.

- Pretrial Hearings are heard on Tuesdays at 2:30 p.m. (hearings are scheduled 2 weeks prior to the trial date).

- Department 518 has opted out of the IDC program. Any Discovery issues that cannot be solved after meeting and conferring should be brought by motion.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:        dept518@alameda.courts.ca.gov
  Phone:       (510) 690-2727


- Ex Parte Matters
  Email:        dept518@alameda.courts.ca.gov
  Phone:       (510) 690-2727


## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 518
- Phone:  1-866-223-2244

Dated:  09/03/2021

_____
Facsimile

Presiding Judge,
Superior Court of California, County of Alameda

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/07/2021

By

_____
Deputy Clerk

Baker, Christopher
One California St
Suite 1250
San Francisco, CA   94111_____

---

## Superior Court of California, County of Alameda

| | |
|---|---|
| Veeva Systems Inc<br><br>**Plaintiff/Petitioner(s)**<br>VS.<br><br>Iqvia Inc<br><br>**Defendant/Respondent(s)**<br>(Abbreviated Title) | No. RG21111679<br><br>**NOTICE OF CASE MANAGEMENT<br>CONFERENCE AND ORDER**<br>Unlimited Jurisdiction |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Notice is given that a Case Management Conference has been scheduled as follows:

| | | |
|---|---|---|
| Date: **06/08/2022**<br>Time: **02:30 PM** | Department: **518**<br>Location: **Hayward Hall of Justice<br>3rd Floor<br>24405 Amador Street, Hayward  CA  94544**<br><br>Internet: **www.alameda.courts.ca.gov** | Judge: **Dennis Hayashi**<br>Clerk: **Dianne Hyatt**<br>Clerk telephone: **(510) 690-2727**<br>E-mail:<br>**Dept518@alameda.courts.ca.gov**<br>Fax: **(510) 267-1585** |

### ORDERS

1. **Plaintiff** must:

    a. **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)); and

    b. **Give notice** of this conference to all other parties and file proof of service.

2. **Defendant must** respond as stated on the summons.

3. **All parties who have appeared before the date of the conference** must:

    a. **Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724;

    b. **File and serve** a completed *Case Management Statement* on Form CM-110  at least **15** days before the Case Management Conference (Cal. Rules of Court, rule 3.725); and

    c. **Post jury fees** as required by Code of Civil Procedure section 631.

4. If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30.  Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

5. You are further ordered to appear in person or through your attorney of record at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed. You may be able to appear at Case Management Conferences by telephone.  Contact CourtCall, an independent vendor, at least three business days before the scheduled conference.  Call 1-888-882-6878, or fax a service request to (888) 882-2946.  The vendor charges for this service.

6. You may file *Case Management Conference Statements* by E-Delivery.  Submit them directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to *www.alameda.courts.ca.gov/ff.*

7. The judge may place a *Tentative Case Management Order* in your case's on-line register of actions before the conference.  This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration.  Check the website of each assigned department for procedures regarding tentative case management orders at *www.alameda.courts.ca.gov/dc.*

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/07/2021.

By

_____

Deputy Clerk

CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
cbaker@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California St., Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax:  (415) 366-2525

Attorneys for Plaintiffs
VEEVA SYSTEMS INC. AND PETER STARK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VEEVA SYSTEMS INC. and PETER STARK,<br><br>               Plaintiffs,<br><br>vs.<br><br>IQVIA INC.<br><br>               Defendant. | Case No. RG21111679<br><br>**MOTION FOR PEREMPTORY CHALLENGE; DECLARATION IN SUPPORT**<br><br>Complaint Filed:  September 2, 2021<br>Trial: No date<br>Judge: Presiding Judge Tara DeSautels<br>Dept.:  1 |

TO THE HONORABLE TARA DESAUTELS, PRESIDING JUDGE OF THE ABOVE ENTITLED COURT

      Plaintiffs Veeva System Inc. and Peter Stark ("Plaintiffs") in the above-entitled matter hereby move that this civil cause, which involves a contested issue of law or fact, and which has been assigned to the Honorable Dennis Hayashi, Judge of the above-entitled Court, be reassigned from that Judge, and that no matters hereinafter arising in this cause be heard or assigned to the Honorable Dennis Hayashi, on the ground that: (1) Plaintiff Veeva Systems previously filed a peremptory challenge against Judge Hayashi alleging prejudice in the related case of *Veeva Systems Inc. v. Medidata Solutions, Inc., et. al. ("Veeva I")*, Case No. RG21111679, resulting in

1    *Veeva 1's* reassignment to Judge Kaus; and (2) the present case (*Veeva 2*) is a continuation of

2    *Veeva 1* for purposes of C.C.P. § 170.6. *E.g., Manuel v. Superior Court* (2010) 181 Cal.App.4[th]

3    382.   Alternatively, if the present case is not a continuation of *Veeva 1*, Plaintiffs seek the

4    reassignment of the case from Judge Hayashi pursuant to the normal operation of C.C.P. § 170.6

5    on the basis of prejudice.

6            This motion is based on the matters contained herein, on Code of Civil Procedure Section

7    170.6 and on the supporting Declaration Under Penalty of Perjury of Chris Baker attached hereto

8    and filed herewith.

9            WHEREFORE, Plaintiffs prays that the relief herein requested be granted.

10

11   Dated: September 17, 2021                   BAKER CURTIS & SCHWARTZ, P.C.

12

13                                      By:   _____
                                             Chris Baker
14                                           Attorneys for Plaintiffs
                                             VEEVA SYSTEMS, INC. AND PETER STARK
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

MOTION FOR PEREMPTORY CHALLENGE; DECLARATION IN SUPPORT

1

**DECLARATION OF CHRIS BAKER**

2      I, Chris Baker, declare that:

3      1.      I am counsel for the Plaintiffs in the above-entitled matter.

4      2.      The Honorable Dennis Hayashi, the Judge in Department 518 to whom the above-

5    entitled matter has been assigned for all purposes, including trial, is prejudiced against the

6    Plaintiffs and/or the interest of the Plaintiffs.

7      3.      Declarant believes that the Plaintiffs cannot have a fair and impartial trial or

8    hearing before this Judge.

9      4.      According to the proof of service, the Court's clerk mailed notice of the

10   assignment of Judge Hayashi on September 7, 2021.  Plaintiffs were unaware of the assignment

11   until they received the notice of assignment through the clerk's mailing.

12      I declare under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct.  Executed on September 17, 2021 in San Francisco, California.

14

15                                                    _____
                                                              Chris Baker

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

1    CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
2    DEBORAH SCHWARTZ, State Bar No. 208934
cbaker@bakerlp.com
3    BAKER CURTIS & SCHWARTZ, P.C.
1 California St., Suite 1250
4    San Francisco, CA 94111
Telephone: (415) 433-1064
5    Fax: (415) 366-2525

6

7    Attorneys for Plaintiffs
VEEVA SYSTEMS INC. AND PETER STARK

8

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VEEVA SYSTEMS INC. and PETER STARK,<br><br>              Plaintiffs,<br><br>    vs.<br><br>IQVIA INC.<br><br>              Defendant. | Case No. RG21111679<br><br>**[PROPOSED] ORDER OF TRANSFER**<br><br>Complaint Filed: September 2, 2021<br>Trial: No date<br>Judge: Presiding Judge Tara DeSautels<br>Dept.: 1 |

The written motion of Plaintiffs Veeva Systems Inc. and Peter Stark in the above-entitled matter for the peremptory disqualification of the Honorable Dennis Hayashi of the above-captioned Court, and the supporting declaration under penalty of perjury of Chris Baker, have been duly presented and filed. In accordance with Code of Civil Procedure § 170.6, it is therefore established that the Honorable Dennis Hayashi is prejudiced against Plaintiffs or the interest of Plaintiffs in the above-entitled matter.

///

///

///

///

THEREFORE, IT IS HEREBY ORDERED that Judge Hayashi is relieved from his assignment as judge in the above-entitled matter, and that the cause shall proceed before the Honorable _____, in Department ___ of this Court.

DATE: _____

_____
The Honorable Tara Desautels,
PRESIDING JUDGE

- 2 -

1   CHRIS BAKER, State Bar No. 181557
    cbaker@bakerlp.com
2   DEBORAH SCHWARTZ, State Bar No. 208934
    cbaker@bakerlp.com
3   BAKER CURTIS & SCHWARTZ, P.C.
    1 California St., Suite 1250
4   San Francisco, CA 94111
    Telephone: (415) 433-1064
5   Fax:  (415) 366-2525

6
    Attorneys for Plaintiffs
7   VEEVA SYSTEMS INC. AND PETER STARK

8
                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                                    COUNTY OF ALAMEDA
10

11

12  VEEVA SYSTEMS INC. and            Case No. RG21111679
    PETER STARK,
13                                    **PROOF OF SERVICE**
                        Plaintiffs,
14                                    Complaint Filed:  September 2, 2021
                                      Trial:  No date
15            vs.                     Judge: Presiding Judge Tara DeSautels
                                      Dept.:  1
16  IQVIA INC.

17                      Defendant.

18

19

20

21

22

23

24

25

26

27

28

---

PROOF OF SERVICE

1

## PROOF OF SERVICE

2
3
4
5

I am a resident of the State of California, over the age of eighteen years, and not a party to

the within action. My business address is 1 California Street, Suite 1250, San Francisco, California

94111. On September 17, 2021, I served the following document(s):

6

1. **MOTION FOR PEREMPTORY CHALLENGE; DECLARATION IN SUPPORT**
2. **[PROPOSED] ORDER OF TRANSFER**

7
8
9

☑ by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at San Francisco, California addressed as set forth below.

10
11
12

by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

13
14

by personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

15
16
17
18

CSC
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833
**AGENT FOR SERVICE OF PROCESS FOR
DEFENDANT IQVIA INC.**

19

I am readily familiar with the firm's practice of collection and processing correspondence

20

for mailing and for shipping via overnight delivery service. Under that practice, it would be

21

deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in

22

an overnight delivery service pick-up box or office on the same day with postage or fees thereon

23

fully prepaid in the ordinary course of business.

24

I declare under penalty of perjury under the laws of the State of California that the above is

25

true and correct. Executed on September 17, 2021 at San Francisco, California.

26
27

_____
Deborah Schwartz

28

- 2 -

 

U.S. POSTAGE PAID
FCM LG ENV
SAN FRANCISCO, CA
94111
SEP 17, 21
AMOUNT

**$1.36**

R2305E123704-14

1000      95833

BAKER CURTIS & SCHWARTZ, PC
1 CALIFORNIA STREET, SUITE 1250
SAN FRANCISCO, CALIFORNIA 94111


**TO:**          CSC
        2710 Gateway Oaks Drive, Suite 150N
                Sacramento, CA 95833


AGENT FOR SERVICE OF PROCESS FOR
DEFENDANT **IQVIA INC.**

Baker, Christopher                                    Iqvia Inc
One California St
Suite 1250
San Francisco, CA   94111_____

---

## Superior Court of California, County of Alameda
## Hayward Hall of Justice

---

| | |
|---|---|
| Veeva Systems Inc | No. <u>RG21111679</u> |
| Plaintiff/Petitioner(s) | |
| VS. | Application Re: Peremptory Challenge as to Dennis Hayashi Granted |
| Iqvia Inc | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

IT IS ORDERED that the Plaintiff's Application Re: Peremptory Challenge as to Dennis Hayashi is granted.

Dated:  09/20/2021

Judge Dennis Hayashi

# EXHIBIT E

CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
DEBORAH SCHWARTZ, State Bar No. 208934
cbaker@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
44 Montgomery Street, Suite 3520
San Francisco, CA 94104
Telephone: (415) 433-1064
Fax:  (415) 366-2525

Attorneys for Plaintiff
VEEVA SYSTEMS INC.

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| VEEVA SYSTEMS INC., | Case No. RG17868081 |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| MEDIDATA SOLUTIONS, INC.; QUINTILES IMS INCORPORATED (now IQVIA), and SPARTA SYSTEMS, INC., | **CAUSES OF ACTION FOR DECLARATORY JUDGMENT AND UNFAIR COMPETITION** |
| Defendants. | |

## I.    INTRODUCTION

1.    This case concerns the systemic use of unlawful non-compete, non-disclosure, and non-disparagement agreements by three out-of-state corporations: (1) Medidata Solutions, Inc.; (2) Quintiles IMS Incorporated; and (3) Sparta Systems, Inc. ("Defendants.")  Each of these Defendants requires its U.S.-based employees to sign a standard agreement with restrictive covenant provisions that violate California law.

2.    Defendants' current and former employees, Plaintiff Veeva Systems Inc. ("Veeva"), other California employers, and the state of California are all harmed by these illegal agreements.

3.      Veeva, for the benefit of itself and the general public, seeks appropriate declaratory and injunctive relief.

## II.      PARTIES and JURISDICTION

4.      Plaintiff Veeva Systems Inc. is a Delaware corporation headquartered in Pleasanton, California.  It is a leader in cloud-based software for the global life sciences industry.

5.      Defendant Medidata Solutions, Inc. ("Medidata") is a software-as-a-service technology company that provides applications and analytics as it relates to clinical trials. Medidata is a Delaware corporation with offices in California.  It is headquartered in New York.

6.      Defendant Quintiles IMS Incorporated (now IQVIA) (referred to in this complaint as "IMS") provides information services and technology to the healthcare industry.  IMS is a Delaware corporation with offices in California.  It is headquartered in North Carolina.

7.      Defendant Sparta Systems, Inc. ("Sparta") provides quality management solutions to the life sciences industry.  On information and belief, Sparta is either a Delaware or New Jersey corporation.  Sparta conducts business in California and has employees located in California.  It is headquartered in New Jersey.

8.      Defendants sell certain products and services that are competitive with certain of Veeva's products and services.  Defendants and Veeva also compete for employees.

## III.      FACTS

### Restrictive Covenants Are Illegal In California

9.      Except in limited situations, California law declares "**every** contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Moreover, California's Cartwright Act defines an unlawful trust as "a combination of capital, skill, or acts by two or more persons . . . to create or carry out restrictions in trade or commerce."  Such agreements, which include post-termination non-compete agreements, overbroad non-disclosure agreements, and non-disparagement agreements are unlawful, against public policy, and void.

10.      A post-termination non-compete – even limited to a specific employer – restricts employees in some way from practicing their trade.  The same goes for an overbroad non-

disclosure agreement or non-disparagement agreement.  Such agreements restrict trade, competition, and the free flow of information in the same manner as a non-compete agreement. *R.R. Donnelly & Sons Co. v. Fagan* (S.D.N.Y. 1991) 767 F.Supp. 1259, 1269.  For example, a non-disclosure agreement that prohibits employees from using and disclosing "all business information" of their past employers is, for all intents and purposes, a covenant not to compete. *Bodemer v. Swanel Beverage, Inc.* (N.D. Ill. 2012) 884 F.Supp.2d 717, 729.

11.    California law forbids non-competes in whatever form.  *Edwards v. Arthur Anderson LLP* (2008) 44 Cal.4th 937, 949-950.

12.    Moreover, and in addition to Business & Professions Code § 16600, the California Labor Code makes it illegal to require employees to sign agreements that prohibit them from disclosing information about their working conditions, wages, or the wages of others. *See, e.g.,* Labor Code § 232, 232.5, and 1197.5(k).  Overbroad non-disclosure agreements and non-disparagement provisions do just that.

**Veeva**

13.    As noted above, Veeva is a California-based employer and a leader in cloud-based software for the global life sciences industry.  All of Veeva's principle corporate activities occur at, and its principle corporate departments are housed within, its Pleasanton headquarters. These California-based activities and departments include Veeva's executive offices, its research and development department, its engineering department, its marketing department, its employee success (or human resources) department, its finance department, its legal department, its information technology department, and its administrative activities.  Veeva's professional services department is based in Veeva's San Francisco satellite office.

14.    The only real estate that Veeva owns is its Pleasanton headquarters.

15.    Ten of Veeva's fourteen most senior executives reside and work in California.

16.    Veeva recruits applicants and employees from its Pleasanton, California headquarters.  For example, Veeva posts job openings on the "careers" section of its website, www.veeva.com.  This website is managed and updated by employees in Pleasanton, California. When jobs are posted, they are typically posted by an employee based in Veeva's Pleasanton

- 3 -

headquarters.  Moreover, when a job applicant sends a resume to Veeva, the resume is typically loaded onto an employee success tracking system that is managed from California.

17.     In addition, Veeva's Pleasanton-based employee success department is responsible for shepherding applicants through the interview process.  Applicants often visit Veeva's Pleasanton headquarters as part of the interview process, and most are interviewed (either in person or by phone) by Pleasanton-based employees.  Ultimate hiring decisions are made by executives based in California.

18.     Veeva is a California-based employer, and all of its U.S.-based employees, regardless of their place of residence, are employed in California.  They sign a standard employment agreement that is governed by California law.  Their employment is governed by policies and procedures that emanate from California.  In the course of their work, they regularly interact with California-based employees, vendors or customers.

19.     Veeva does not require its employees to sign non-compete agreements.  Veeva does not require its employees to sign a non-disparagement agreement.  Veeva does not require its employees to comply with an overbroad non-disclosure agreement.

20.     Veeva currently employs approximately 1250 U.S.-based employees.  More than 600 of these employees work in its Pleasanton headquarters.  More than 450 other employees work remotely from home when they are not traveling for work.  The remaining 200 employees work in Veeva's satellite offices, including its satellite offices in California.

21.     Veeva currently has more than 500 customers, a significant number of which are based in California or have significant California operations.  Some of Veeva's California-based customers include such prominent life sciences companies as Amgen, Gilead, Edwards Lifesciences, IONIS Pharmaceuticals Inc., and Impax Laboratories.

22.     Consistent with California law, and consistent with its belief in fair competition for employees, Veeva will hire persons to provide services in California within the meaning of California law even if a different employer required them to sign a non-compete.  Veeva explains its philosophy and its intent to comply with California law on its website, stating:

- 4 -

> The practice of non-compete agreements conflicts with our value of employee success. Non-competes are an outdated business practice. We don't ask employees to sign them and we will not let a current or past non-compete agreement prevent us from hiring a qualified candidate.

23.    Veeva further understands that one of the primary drivers of California's technology industry is its strong public policy against agreements that restrain trade.  Veeva's website also states:

> One of the key contributing factors to Silicon Valley's success and culture of innovation has been California's ban of non-competes as a condition of employment. The mobility of talent made the founding and growth of countless tech companies possible, including Apple, Intel, Google, Salesforce, and Veeva. It is the fuel for a thriving growth market and has ensured the free flow of people and new ideas.

24.    Veeva also accurately explains:

> Non-compete agreements are intended to restrict an employee's ability to move between jobs. Nearly one fifth of U.S. workers are impacted by these agreements as many companies include non-compete clauses in their standard terms of employment, realizing that most employees won't read or understand the fine print. Employees unknowingly sign contracts that could eventually be used against them as they pursue new job opportunities. They can harm a person's future employment prospects if the hiring company isn't willing to stand up for them. It's just wrong.

25.    Under California Labor Code § 2802, Veeva generally has an obligation to defend employees if they are sued for work performed in the scope of their employment.  Moreover, and again as a general rule, if Veeva fires an employee because of the threat of litigation arising from an unlawful non-compete agreement, it would violate California public policy.

26.    At the same time, Veeva has no interest in another company's actual and protectable confidential information, such trade secrets, consumer data, and material non-public information.  But overbroad non-disclosure agreements target more than just this information. They effectively prohibit employees from using or disclosing all the general skills, knowledge, acquaintances, and their overall experience when working for a new employer.  They also hinder recruitment by preventing employers from learning non-confidential information from

- 5 -

prospective employees – such as their reasons for leaving, their wages, or their working conditions – that might inform the decision to hire.

27.     Accordingly, Veeva advises prospective employees that they should:

> Break the non-compete cycle. Join a progressive company that does not require you to sign a non-compete and that will defend you against attempts to enforce your existing non-compete. Don't let the threat of a non-compete or lawsuit derail your career. . . .  The reality is that most non-competes are abusive, overly broad, and not enforceable, even in the jurisdictions that allow them.
>
> <u>If you join Veeva, your responsibility is to return all data to your former employer and never share confidential information</u>. If you do that, in the event your former employer pursues a claim, Veeva will provide for your full legal representation and help make the process as easy as possible. In the unlikely event a non-compete delays or restricts your work at Veeva, you will retain your position and your compensation will continue unaffected.

28.     Consistent with California law, Veeva fully intends to stand by these commitments.

### Medidata

29.     Medidata is headquartered in New York City.  Nevertheless, Medidata conducts significant business in California.  Indeed, certain of Medidata's subsidiaries and affiliates are headquartered in California.   Medidata leases more than 14,000 feet of office space in San Francisco, California.  One of its subsidiaries, Patient Profiles, LLC, is incorporated in California.  Medidata also owns Chita, a company based in San Mateo, California.  On information and belief, Medidata employees perform work for these subsidiaries and affiliates.

30.     In addition, Medidata employees work with numerous clients and partners with significant operations in California.  Medidata's California-based clients and partners include prominent companies such as Amgen, Gilead, Roche – Genentech, Abbott Diabetes and Abbott Vascular, and Vital Connect.  Medidata gains significant benefits through its close contacts with California.  Many of Medidata's employees – regardless of their place of residence – provide services in California within the meaning of California law and are entitled to the protection of California law.

- 6 -

31.     Medidata is aware that Veeva does not require its employees to sign non-compete

agreements.   Accordingly, Medidata actively recruits Veeva's current and former employee

through internal and external recruiters.  Veeva employees that Medidata has attempted to recruit

since 2016 include, but are not limited, Paul Djamoos (a Veeva global account manager), Derek

Gamber (a Veeva account representative), and David Moore (a Veeva sales manager).

32.     Medidata has also hired Veeva employees, including, Eric Grundstrom and Jorge

Sanchez.

*Medidata Requires All Its Employees to*

*Sign a Non-Compete/NDA as a Condition of Employment*

33.     Medidata requires all its employees to enter into a standard "Employee

Confidentiality, Invention, Assignment, and Non-Competition Agreement" that restricts these

employees' right to work for other employers in California.  The "Medidata non-compete/NDA"

is attached as Exhibit A.  The Medidata non-compete/NDA for U.S.-based employees states:

> During the term of my employment with Medidata, **and for a
> period of one (1) year thereafter**, regardless of the circumstances
> of termination, I will not directly or indirectly, whether as a . . . .
> consultant, agent, employee, or otherwise, engage, participate, or
> invest in any business activity **anywhere in the world** which
> develops or markets products or performs services which are
> competitive with the products or services of the Company (a
> competitor), including but not limited to any business entity which
> develops, manufactures, or provides consulting services with
> respect to data management applications for pharmaceutical,
> biotechnology, and genomic companies.  I will not directly or
> indirectly, engage or participate in the development of any product
> or service which the Company has under development or which are
> the subject of active planning at any time during the term of my
> employment.[1]

34.     The same agreement defines underlined everything at Medidata as confidential, and prohibits

employees from underlined ever using or disclosing so-called "confidential information." Specifically, the

agreement states:

---

[1] Medidata requires some employees to sign the same agreement with a limitation that states the
non-compete provision does not apply so long as the employee performs services **for Medidata**
in California. (Exhibit B.)  Employees who leave Medidata and work for **another employer** in
California are bound by the same non-compete as all other Medidata employees.

- 7 -

I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of Medidata or any of its subsidiaries (together, the "Company"), or to disclose to any person, firm or corporation without written authorization of the Board of Directors of Medidata, any Confidential Information of the Company. I understand that "Confidential Information" means any Company proprietary information, technical-data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including but not limited to, customers of the Company on which I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware, configuration information, marketing, finances or other business information disclosed to me by the Company or to which I have access either directly or indirectly in writing, orally or by drawings or observation of parts or equipment.

35.     Medidata requires all its employees to sign and adhere to the Medidata non-compete/NDA.  The Medidata non-compete/NDA states that it is governed by New York law.

36.     The Medidata non-compete/NDA – which prohibits employees from working for competitors such as Veeva in California – is unlawful.

**Veeva Hires Current and Former Medidata Employees**

37.     Veeva has hired a number of Medidata employees despite Medidata's unlawful non-compete/NDA.  For example:

*Alan Mateo*

38.     In or around March 2005, Alan Mateo began work for Medidata.  Like all Medidata employees, Mateo was required to sign the Medidata non-compete/NDA as a condition of employment.

39.     In or around February 2015, Mateo left Medidata.  Under the Medidata non-compete/NDA, Mateo was prohibited from working for a Medidata competitor anywhere in the world (including in California) until February 2016.  Mateo was also prohibited by the Medidata non-compete/NDA from ever disclosing to anyone (including Veeva) any so-called "business information" of Medidata, including information that is not confidential as a matter of law.

- 8 -

40.     Veeva recruited Mateo from its California headquarters.  Veeva made the decision to hire Mateo in California.  Mateo began working for Veeva in April 2015, within the one year time frame set forth in the Medidata non-compete/NDA. Mateo signed an employment agreement with Veeva that is governed by California law.  Mateo's employment with Veeva is governed by employment policies that are developed in and emanate from California.

41.     Mateo reports to a California-based Veeva executive.  Mateo regularly speaks with Veeva employees in California.  Mateo regularly travels to California to meet with Veeva clients, colleagues, subordinates, and superiors.

42.     Mateo is employed by Veeva in California within the meaning of California law.

*Jason Rizzo*

43.     In or around August 2004, Jason Rizzo began work for Medidata.  Like all Medidata employees, Rizzo was required to sign the Medidata non-compete/NDA as a condition of employment.

44.     In or around February 2016, Rizzo left Medidata.  Under the Medidata non-compete/NDA, Rizzo was prohibited from working for a Medidata competitor anywhere in the world (including in California) until February 2017.  Rizzo was also prohibited by the Medidata non-compete/NDA from ever disclosing to anyone (including Veeva) any so-called "business information" of Medidata, including information that is not confidential as a matter of law.

45.     Veeva recruited Rizzo to work for Veeva from its California headquarters.  In October 2016, and within the one year time frame set forth in the Medidata non-compete/NDA, Veeva hired Rizzo.  Veeva made the decision to hire Rizzo in California.  Rizzo signed an employment agreement with Veeva that is governed by California law.  Rizzo's employment with Veeva is governed by employment policies that are developed and emanate from California. Rizzo initially reported to Veeva executives based in California.  Rizzo travels regularly to California.  Rizzo regularly speaks with Veeva employees.  Rizzo works on products that are sold to Veeva's California-based customers.

46.     Rizzo is employed by Veeva in California within the meaning of California law.

- 9 -

*Sondra Pepe*

47.     In or around March 2008, Sondra Pepe began work for Medidata.  Like all Medidata employees, Pepe was required to sign the Medidata non-compete/NDA.  Pepe's non-compete/NDA included the following meaningless "disclaimer" in the non-compete section:

> THIS SECTION 5 SHALL HAVE NO FORCE OR EFFECT, AND SHALL NOT BE DEEMED A PART OF THIS AGREEMENT DURING ANY AND ALL PERIODS IN WHICH I PERFORM SERVICES <u>AS AN EMPLOYEE OF MEDIDATA</u> PRINCIPALLY IN THE STATE OF CALIFORNIA, BUT SHALL BECOME IMMEDIATELY EFFECTIVE IF AND TO THE EXTENT I PERFORM SERVICES AS AN EMPLOYEE OF MEDIDATA PRINCIPALLY IN A JURISDICTION OTHER THAN THE STATE OF CALIFORNIA.

(Exhibit B).

48.     In all other ways, the Medidata non-compete/NDA signed by Pepe is the same as the Medidata non-compete/NDA signed by all other Medidata employees.

49.     In or around October 2013, Pepe left Medidata's employ.  Under the Medidata non-compete/NDA, Pepe was prohibited from working for a Medidata competitor anywhere in the world (including in California) until October 2014.  Pepe was also prohibited by Medidata's non-compete/NDA from ever disclosing to anyone (including Veeva) any business information of Medidata, including information that is not confidential as a matter of law.

50.     Veeva recruited Pepe from California, and Veeva's decision to hire Pepe was made in California.  In May 2014, within the one year period set forth in the Medidata non-compete/NDA, Veeva hired Pepe to work for Veeva at its Pleasanton, California headquarters.  Pepe resides in California.

51.     Pepe is employed by Veeva in California within the meaning of California law.

*Other Medidata Employees*

52.     Veeva intends to continue recruiting current and former Medidata employees from California for employment in California.  The Medidata non-compete/NDA makes this recruitment more difficult.  Medidata employees have declined to pursue opportunities with Veeva because of the Medidata non-compete/NDA.

- 10 -

**The Medidata Controversy**

53.     The Medidata non-compete/NDA harms competition and is unlawful.

54.     There is a concrete and justiciable controversy over the legality and enforceability of the Medidata non-compete/NDA.  Veeva has standing to seek both declaratory and injunctive relief with respect to this controversy on behalf of itself and for the benefit of the public.

55.     Evidence of the controversy between Veeva and Medidata over the Medidata non-compete/NDA includes the following:

56.     On January 26, 2017, Medidata filed suit against Veeva, Mateo, Rizzo, Pepe and other Veeva employees in the United States District Court for the Southern District of New York. With respect to Rizzo, Pepe, and Mateo, the complaint alleges (among other things) that:

(a)     These employees breached their non-compete obligations to Medidata; and

(b)     These employees breached their non-disclosure obligations to Medidata.

57.     With respect to Veeva, the complaint alleges (among other things) that:

(a)     Veeva – by hiring and employing Mateo, Rizzo, and Pepe – tortiously interfered with these employees' non-compete obligations to Medidata; and

(b)     Veeva – by hiring and employing Mateo, Rizzo, and Pepe – tortiously interfered with these employees' non-disclosure obligations to Medidata.

58.     In support of its claims against Veeva, Medidata specifically relied upon Veeva's recruitment and employment of Mateo, Rizzo, and Pepe, Veeva's publicly-stated policy concerning non-compete agreements, and Veeva's publicly-stated commitment to defend and indemnify employees in accordance with Labor Code § 2802.

59.     In Medidata's prayer for relief in its complaint, Medidata asks that the United States District Court (among other things):

(a)  Find that Rizzo, Pepe, and Mateo breached the Medidata non-compete/NDA.

(b)  Find that Veeva tortiously interfered with the Medidata non-compete/NDA as it relates to Rizzo, Pepe, and Mateo;

(c)  Award damages against Veeva, Rizzo, Pepe, and Mateo; and

- 11 -

(d) Issue an injunction prohibiting Veeva from interfering with the Medidata non-compete/NDA with respect to <u>any</u> of Medidata's current or former employees.

60.     On March 1, 2017, in the face of a motion to compel arbitration, Medidata dismissed its claims against Rizzo, Pepe, and Mateo without prejudice.

61.     On September 20, 2017, Medidata filed a second amended complaint in the New York action ("the 2AC").  The 2AC alleges that:

(a)     Veeva tortiously interfered with the Medidata non-compete obligations of Rizzo, Pepe, and Mateo;

(b)     Veeva tortiously interfered with the Medidata non-disclosure obligations of Rizzo, Pepe, and Mateo; and

(c)     Veeva has engaged in unfair competition and aided and abetted the breach of fiduciary duties of Rizzo, Pepe and Mateo by inducing the breach of the Medidata non-compete/NDA by these persons.

62.     Medidata continues to seek damages against Veeva for allegedly inducing the breach of the Medidata non-compete/NDA.  Medidata continues to seek an injunction prohibiting Veeva from interfering with the Medidata non-compete/NDA with respect to <u>any</u> of Medidata's current or former employees.

63.     Medidata continues to rely upon the recruitment and employment of Mateo, Rizzo, and Pepe, Veeva's publicly-stated policy concerning non-compete agreements, and Veeva's publicly-stated commitment to defend and indemnify employees in accordance with Labor Code § 2802, as the basis for its claims in the New York action.

**Veeva's Injury-in-Fact as to Medidata**

64.     The Medidata non-compete/NDA, and Medidata's efforts to enforce this unlawful agreement, have caused Veeva injury-in-fact and lost money and property within the meaning of California's unfair competition law.

65.     For example, Veeva retained the law firms of Keker, Van Nest & Peters and Blank Rome to defend it and its employees in the New York action.  Rizzo, Mateo, and Pepe have also

1    retained the firm of Pennington Lawson to represent their interests.  In accordance with its

2    obligations under Labor Code § 2802, Veeva is paying its employees' defense costs.

3        66.     Veeva's defense fees and costs to date with respect to the Medidata New York

4    action exceed nine-hundred thousand dollars ($900,000).  A significant portion of these defense

5    costs arise directly from Medidata's claims against Veeva and its employees under the Medidata

6    non-compete/NDAs.

7        67.     Moreover, the Medidata non-compete/NDA has caused Veeva to spend attorney

8    time and management time in analyzing and providing advice concerning the unlawful

9    agreement.  This has resulted in the diversion of resources and economic injury.

10                          **Quintiles/IMS (now IQVIA)**

11       68.     IMS is headquartered in Durham, North Carolina.   Nevertheless, and like

12   Medidata, IMS conducts significant business in California through its employees.  IMS has

13   offices in San Francisco, Redwood City, Rancho Cordova, Fresno, San Diego, San Jose, and

14   Woodland Hills, among other locations.

15       69.     IMS employees work with numerous clients and partners with significant

16   operations in California.  IMS gains significant benefits through its close contacts with California.

17   Many of IMS's employees – regardless of their place of residence – work in California for

18   purposes of California's unfair competition law, Business & Professions Code §16600 and the

19   Cartwright Act.

20       70.     IMS is aware that Veeva does not require its employees to sign non-compete

21   agreements.   Accordingly, IMS actively recruits Veeva's current and former employee through

22   internal and external recruiters.  For example, in December 2017, recruiters from an IMS

23   subsidiary called HighPoint Solutions sent numerous solicitations to Veeva employees.  The

24   solicitations generally stated that:

25                  We have very exciting consulting engagements with some of the
                   leading pharma organizations opening up and based on your profile
26                  I think it could be a great opportunity for you!!  Please feel free to
                   reach out to me at any time, or let me know how and when I can
27                  contact you.  I look forward to speaking with you soon.  Brandon
                   Bain Talent Acquisition Manager.
28

                                    - 13 -

71.     IMS has also hired and employed current and former Veeva employees.

*IMS Requires All Its Employees to*

*Sign a Non-Compete/NDA as a Condition of Employment*

72.     Nevertheless, IMS requires all its employees to enter into a standard "Confidentiality & Policy Agreement" that contains an illegal post-termination non-compete and overbroad non-disclosure agreement (the IMS non-compete/NDA).  A copy of the IMS non-compete/NDA is attached as Exhibit C.

73.      With respect to its non-compete provision, the IMS non-compete/NDA states:

> During the term of my employment with IMS, I agree I will not, without the prior written consent of IMS, manage, operate, join, control, or participate in the ownership, management, operation, or control of or engage in any business or perform any service directly or indirectly in competition, **anywhere in the United States or Canada**, with the products and services of the IMS Companies, or have any direct or indirect interest, whether as a proprietor, partner, director, officer, employee, creditor, stockholder, consultant or in any capacity whatsoever, in any enterprise in competition, **anywhere in the United States or Canada**, with the products and services of the IMS Companies. . . . .  The terms set forth in this paragraph shall remain in effect after termination of this Agreement in accordance with the following: (1) **if my term of employment with IMS is less than ninety days, my agreement not to compete shall survive termination for a period of 6 months; (2) if my term of employment with IMS is ninety days or more, my agreement shall survive termination for a period of twelve months.**

(Exhibit C).

74.     Like the Medidata non-compete/NDA, the IMS non-compete/NDA also defines everything at IMS as confidential, and generally prohibits employees from ever using or disclosing so-called "confidential information" to anyone outside of IMS.  The IMS non-compete/NDA further defines "Confidential Information" as **all** "information not generally known outside the IMS Companies," including "data obtained from sources **outside** the IMS Companies."

75.     The IMS non-compete/NDA – which prohibits employees from working for competitors such as Veeva in California – is unlawful.

- 14 -

**Veeva Hires Current and Former IMS Employees**

76.      Veeva has hired a number of current and former IMS employees despite IMS's unlawful non-compete/NDA.  For example:

*Jeffrey Fusco*

77.      In or around August 2014, Jeffrey Fusco began work for IMS.  As a condition of employment, he was required to sign the IMS non-compete/NDA.  Fusco left his employment with IMS in December 2015.

78.      During the course of his work for IMS, Fusco worked on matters for IMS clients based in California.

79.      Veeva recruited Fusco from its California headquarters.  The decision to hire Fusco was made by employees based in California.  In January 2016, and within the 12-month period set forth in the IMS non-compete/NDA, Fusco started work with Veeva.  His onboarding process was managed from California.

80.      Fusco signed an employment agreement with Veeva that is governed by California law.  Fusco's employment with Veeva is governed by employment policies that are developed and emanate from California.

81.      During the course of his employment with Veeva, Fusco has reported to Veeva executives based in California.  During the course of his work with Veeva, Fusco interacts with and communicates regularly with employees who reside in California.  He travels to California as a part of his work.

82.      Fusco also has ongoing contacts with clients who reside and work in California.

83.      Fusco is employed by Veeva in California within the meaning of California law.

*Other IMS Employees*

84.      Veeva intends to continue recruiting and hiring current and former IMS employees from California for employment in California.  The IMS non-compete/NDA makes this recruitment more difficult and expensive.

- 15 -

**The IMS Controversy**

85.    The IMS non-compete/NDA harms competition and is unlawful.

86.    There is a concrete and justiciable controversy over the legality and enforceability of the IMS non-compete/NDA.  Veeva has standing to seek declaratory relief with respect to this controversy.

87.    Evidence of the controversy between Veeva and IMS over the IMS non-compete/NDA includes the following:

88.    IMS has a pattern and practice of threatening to and/or seeking damages arising from Veeva's alleged interference with IMS's non-compete and NDA agreements.  In light of IMS's pattern and practice, Veeva seeks a declaration of its rights now as it relates to the standard IMS non-compete/NDA, including the non-compete/NDA signed by Fusco.

89.    On January 8, 2016, IMS sent a letter to Fusco and Veeva.  In the letter, IMS asserted that Fusco was bound by the standard IMS non-compete/NDA.  IMS further stated that Veeva and Fusco must comply with certain obligations, including the non-compete obligation as it related to Fusco's employment activities with Veeva, and specifically with respect to certain of IMS's and Veeva's California-based clients.  IMS further stated: "If legal action is necessary, IMS Health may seek (a) monetary damages from you and those acting in concert with you attributable to your wrongful actions, (b) an injunction against you and all those acting in concert with you, (c) reimbursement for reasonable attorneys' fees and court costs, and (d) all the other relief it deems appropriate."  The letter further stated that "the statements and requests set forth in this letter are made without prejudice to, or waiver of, any legal and equitable rights or remedies available to IMS Health, all of which are expressly reserved."

**Veeva's Injury-in-Fact as to IMS**

90.    The IMS non-compete/NDA has caused Veeva injury-in-fact and lost money and property within the meaning of California's unfair competition law.  For example, Veeva restricted the employment activities of Fusco in response to IMS's letter concerning Fusco.  This resulted in the diversion and loss of Veeva's economic resources.  Veeva also spent valuable

- 16 -

attorney and management time in analyzing and providing advice concerning IMS's letter

regarding Fusco.  This, too, resulted in the diversion and loss of Veeva's economic resources.

### Sparta Systems, Inc.

91.    Sparta Systems is headquartered Hamilton, New Jersey.  It also conducts

significant business in California through its employees.  A number of its employees reside in San

Diego, Los Angeles, Santa Barbara, and San Francisco.

92.    Sparta employees work with numerous clients and partners with significant

operations in California, and has numerous California-based clients and partners.  Sparta gains

significant benefits through its close contacts with California.  Many of Sparta's employees –

regardless of their place of residence – work in California for purposes of applicable California

law.

93.    Sparta is aware that Veeva does not require its employees to sign non-compete

agreements.   Accordingly, Sparta actively recruits Veeva's current and former employees.  For

example, and most recently, on November 7, 2017, a Sparta recruiter sent an email to a Veeva

salesperson asking, among other things, that this person refer others to Sparta.  The email stated:

> My name is Michele Kovalchek and I work for Sparta Systems.
>
> Sparta Systems is a software company, providing a complete global quality management software solutions.  Our client base includes pharmaceuticals, medical devices, biotechnology, CROs, CPG, electronics manufacturing, and other highly regulated industries.
>
> I saw your profile on LinkedIn and was impressed by your experience.  I would like to invite you to look at the opportunities we have open at Sparta.
>
> Please note that offer applies only to US citizens/residents or owners of a US work permit.  US Visa sponsorship is not offered.
>
> Should you be interested, please submit your resume through our website at http://www.spartasystems.com/about-us/careers/ and put "requested by Michele through LinkedIn."
>
> If not, and you know a friend or a colleague that might be interested, I would appreciate it if you refer them.

- 17 -

1    I will be glad to provide more information if you find the position
     interesting.

2    . . . .

3    94.    Sparta has also hired and employed current and former Veeva employees.

4    *Sparta Requires All Its Employees to*

5    *Sign a Non-Compete/NDA as a Condition of Employment*

6    95.    Sparta requires all its employees to sign a standard "Employee Covenants

7    Agreement" that contains an illegal post-termination non-compete, non-disclosure, and non-

8    disparagement agreement (the Sparta non-compete/NDA).  A copy of the standard Sparta non-

9    compete/NDA is attached as Exhibit D.

10    96.    With respect to its non-compete provision, the Sparta non-compete/NDA states

11    (among other things):

12    I agree during the course of my employment **and for a period of
      nine (9) months following the termination of my employment
13    with the Company** (for any reason or no reason) (the "Restricted
      Period"), I will not, without the express prior written consent of the
14    Company, **anywhere**, either directly or indirectly, whether alone or
      as an owner, shareholder, partner, member, joint venturer, officer,
15    director, consultant, independent contractor, agent, employee, or
      otherwise of any company or business enterprise, assist in, engage
16    in or otherwise be connected to or benefit from any business
      competitive with that of the Company. . . .  **The above limitation
17    shall apply globally since the Company's operation[s] are global
      in nature. . . .**

18

19

20    (Exhibit D ¶ 5).

21    97.    In addition, the Sparta non-compete/NDA includes an overbroad non-disclosure

22    provision that prohibits employees from **ever** using or disclosing "Confidential Information,"

23    which Sparta defines to include (among other things): all "business information and materials,

24    whether or not reduced to writing or other medium and whether or not marked confidential,

25    proprietary, or the like, including, but not limited to . . . logos, writings or other materials. . . .

26    products . . . concepts . . .customer and supplier lists, and customer and supplier information . . .

27    ." (Exhibit D ¶ 1).

28

- 18 -

98.     Finally, the Sparta non-compete/NDA includes a non-disparagement provision that states:

> I will not at any time (during or after my employment with the Company) disparage the reputation of the Company, its customers and its or their respective affiliates or any of their respective officers, directors, employees, or agents.

(Exhibit D ¶ 6).

99.     The Sparta non-compete/NDA states that it is governed by New Jersey law.

### Veeva Recruits Current and Former Sparta's Employees

100.     Veeva has recruited and/or hired a number of current and former Sparta employees despite Sparta's unlawful non-compete/NDA.  For example:

*Sanjay Goswami*

101.     Sanjay Goswami worked for Sparta from at least June 2014 to December 2016. As a condition of employment, Goswami was required to sign the Sparta non-compete/NDA. While employed by Sparta, Goswami lived and worked from his residence in Aliso Viejo, California.  While working for Sparta, Goswami traveled both inside and outside of California for business.

102.     When Goswami informed Sparta he was leaving its employ, Sparta asked where Goswami was going to work next.  Goswami declined to state his intention to join Veeva because he was afraid of the Sparta non-compete/NDA.   Sparta reminded Goswami of his alleged obligations to comply with the Sparta non-compete/NDA at the end of his employment with Sparta.  Goswami declined to update his LinkedIn profile upon joining Veeva out of fear of the Sparta non-compete/NDA.

103.     Goswami joined Veeva in January 2017, within the nine month period set forth in the Sparta non-compete/NDA.  Veeva's decision to hire Goswami was made in California. Goswami signed an employment agreement with Veeva that is governed by California law. Goswami's employment with Veeva is governed by employment policies that are developed and emanate from California.

FIRST AMENDED COMPLAINT

104.    Goswami continues to work for Veeva from his home in California.  He regularly interacts with Veeva's California-based employees.

105.    Goswami is employed in California within the meaning of California law.

*John Marshall*

106.    John Marshall worked for IMS from January 2015 to May 2017.  As a condition of working for Sparta, Marshall signed the Sparta non-compete/NDA.  While working for Sparta, Marshall had two major clients in California and visited California regularly to service those accounts.

107.    In May 2017, and within the nine month period set forth in the Sparta non-compete, Veeva made the decision to hire Marshall in California.

108.    Marshall signed an employment agreement with Veeva that is governed by California law.  Marshall's employment with Veeva is governed by employment policies that are developed and emanate from California.  Marshall's onboarding was managed by employee success personnel in California.

109.    In his position with Veeva, Marshall regularly interacts with Veeva personnel who reside in California.  He communicates with them to perform his work, to sell Veeva's services, and too address HR and other issues.  Marshall also services Veeva clients with operations in California and speaks with California-based Veeva clients regularly.

110.    Marshall is employed in California within the meaning of California law.

*Jane Roe*

111.    In addition, Veeva has sought to recruit other Sparta employees.  These recruitment efforts were ultimately unsuccessful because of employee fears of the Sparta non-compete/NDA and Sparta's threatened enforcement of its illegal agreement.

112.    For example, in the summer of 2016, Veeva offered "Jane Roe" a job.[2]  The decision to hire Roe was made in California.  Veeva incurred costs in recruiting Roe, including the diversion of resources and expenses for an out of office interview meeting and travel.

---

[2] Veeva uses a pseudonym to identify this employee to prevent Sparta from retaliating against her.

FIRST AMENDED COMPLAINT

113.   In response to Roe's stated concerns about the Sparta non-compete/NDA, Veeva's CEO diverted Veeva resources and spent time sending her an email that stated in part:

> Hello [Jane Roe]:
>
> I know we talked about the issue of your non-compete agreement with Sparta. [Employee] relayed your request for us to write down our thoughts. I think this is reasonable and good to have things written down.
>
> I hope you join Veeva. I think it will be a success for you, for Veeva, and for our customers.
>
> We don't believe in non-compete agreements, and you will not sign one here. We think they are bad for individuals, bad for the economy, and bad for customers. We feel they are an outdated business practice . . . .
>
> You will be doing a different role at Veeva than you are currently doing at Sparta, so that the potential enforcement of a non-compete would be questioned by a court. . . .  However, if Sparta did bring legal action against you, we would supply you with legal counsel and take care of your legal expenses. In the unlikely event that a court would put some temporary restrictions on your work duties with Veeva in terms of products or customers, or any other restriction, your work status and compensation at Veeva would not be affected by this action.
>
> As a reminder, it is very important that you not bring any Sparta intellectual property to Veeva.
>
> I hope this provides the clarity you are looking for.

114.   Roe accepted Veeva's job offer, and then withdrew her acceptance. A substantial factor in her decision to do so was the Sparta non-compete/NDA. If Roe had accepted employment with Veeva, her employment would have been governed by California law and she would have been employed by Veeva in California within the meaning of California law.

115.   As a result of the Sparta non-compete/NDA, Veeva lost a qualified candidate. It has since incurred additional recruiting expenses and diverted resources in finding someone else to fill the job that Roe would have filled but for the Sparta non-compete/NDA.

116.   Veeva intends to continue to recruit and attempt to hire current and former Sparta employees.

- 21 -

**The Sparta Controversy**

117.    The Sparta non-compete/NDA harms competition and is unlawful.

118.    There is a concrete and justiciable controversy over the legality and enforceability of the Sparta non-compete/NDA.  Veeva has standing to seek declaratory injunctive relief with respect to this controversy.

119.    Evidence of the controversy between Veeva and Sparta over the Sparta non-compete/NDA includes the following:

120.    Sparta has a pattern and practice of threatening to and/or seeking damages arising from Veeva's alleged interference with the Sparta non-compete/NDA.  Sparta has also accused Veeva of intentionally interfering with the Sparta non-compete/NDA by stating that it will defend and indemnify employees accused of violating its unlawful agreement by working for Veeva.  In light of this pattern and practice, Veeva seeks a declaration of its right to recruit and hire Sparta employees for employment in California, and defend them in litigation if they chose to work for Veeva, including Goswami and Marshall.  In addition:

121.    On May 31, 2017, Sparta sent a letter to Veeva's CEO concerning the employment of John Marshall.  The letter set out the terms of the Sparta non-compete/NDA and stated:

> Please be advised that employment of Mr. Marshall by Veeva Systems would be a direct violation of the Agreement.  Indeed, even assuming that Mr. Marshall is lawfully entitled to become an employee of Veeva Systems during the Restricted Period (which he is not), given the competitive relationship between Sparta Systems and Veeva, it would be virtually impossible for Mr. Marshall not to violate a number of provisions in the Agreement, including the provisions relating to his agreement not to disclose and/or use Confidential Information as that term is defined in the Agreement.  If Veeva Systems proceeds to employ Mr. Marshall, please be advised that Sparta Systems fully intends to enforce its rights under the Agreement.

> Please contact me or have your counsel contact me by close of business on Wednesday, June 7, 2017, to confirm that Veeva will not employ Mr. Marshall in violation of the Agreement.  If I do not hear from you, Sparta Systems will assume you intend to allow Mr. Marshall to violate the Agreement and will take appropriate action.

FIRST AMENDED COMPLAINT

**Veeva's Injury-in-Fact as to Sparta**

122.    The Veeva non-compete/NDA has caused Veeva injury-in-fact and lost money and property within the meaning of California's unfair competition law.  For example:

123.    In light of the Sparta non-compete, Veeva did not assign Marshall to any of Marshall's former Sparta clients, including those based in California.  This made Marshall less productive than he otherwise would have been.  Moreover, in response to Sparta's May 31, 2017 correspondence concerning Marshall, Veeva incurred attorney's fees and costs.  Veeva retained the law firm of Nukk-Freeman & Cerra, P.C. to represent it and, in accordance with its obligations under Labor Code § 2802, Marshall.  Marshall then filed a declaratory relief action in New Jersey state court which Marshall later dismissed without prejudice prior to the California action being filed.  Veeva incurred more than $30,000 in outside attorney's fees and costs as a result of Sparta's litigation threat concerning Marshall.

124.     Finally, the Sparta non-compete/NDA has resulted in the diversion and loss of Veeva's economic resources.  For example, Veeva also spent valuable management time and other resources recruiting Jane Roe, only to have Roe withdraw her acceptance of Veeva's employment offer as a result of the Sparta non-compete/NDA.  Moreover, due to the loss of Roe's candidacy, Veeva spent additional management time and incurred additional recruiting costs in finding and hiring a different candidate.

**Veeva's Additional Injury-In-Fact as to all Defendants**

125.    In addition, as a direct result of Defendants' use of unlawful non-competes, and the negative impact that these non-competes have had on Veeva's recruitment efforts, Veeva has spent well more than sixty hours of management and attorney time drafting and publishing its public statement on non-compete agreements that is referenced above and that is maintained on Veeva's website.  In addition to this diversion of resources, Veeva has also incurred administrative costs in maintaining this website.

### IV.    CAUSES OF ACTION

126.    In light of the above facts, Veeva brings the following causes of action.

**FIRST CAUSE OF ACTION**

**DECLARATORY RELIEF CONCERNING RECRUITMENT OF DEFENDANTS'**

**EMPLOYEES**

**(AS TO ALL DEFENDANTS)**

127.    An actual case or controversy exists over Veeva's right to recruit Defendants' current and former employees, notwithstanding the fact that these employees have signed Defendants' standard non-compete/NDAs.  Veeva desires a declaration of its rights with respect to Defendants as it relates to recruitment of Defendants' current and former employees.  Veeva, as a competitor of Defendants with respect to certain services and products, has an interest in these standard non-compete/NDAs because they inhibit Veeva's ability to fairly compete for employees.

128.    The controversy is tied to concrete and justiciable facts involving Veeva's actual or attempted recruitment of the following employees.

(a)    As to Medidata: The recruitment of Sondra Pepe, Alan Mateo, and Jason Rizzo.

(b)    As to IMS: The recruitment of Jeffrey Fusco.

(c)    As to Sparta: The recruitment of Sanjay Goswami, John Marshall, and the failed recruitment of Jane Roe.

129.    Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void.  Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

130.    California has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects.

131.    California employers have a strong and legitimate interest in having broad freedom to choose from a national applicant pool in order to maximize the quality of the product or services they provide.  The State of California has a strong interest in protecting California-based

- 24 -

employers and their employees from anti-competitive conduct from out-of-state employers, like Defendants, who would interfere with the freedom of Veeva and its employees.

132.    Veeva – a California-based employer – is protected in the solicitation of Defendants' employees to provide services in California – notwithstanding the employees' place of residence or the existence of a non-compete/NDA.  Defendants disagree.

133.    Accordingly, Veeva seeks a declaratory judgment finding that Veeva has the right to solicit Defendants' employees in accordance with the above facts and law.  Ancillary to this declaratory judgment, Veeva also seeks an order enjoining Defendants from taking any action that infringes in any way on this right.

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF CONCERNING INDEMNITY OF EMPLOYEES

### (AS TO DEFENDANTS MEDIDATA AND SPARTA)

134.    An actual case or controversy exists over Veeva's right and obligation to indemnify and/or defend its employees when they are faced with threatened or actual litigation arising from Medidata's or Sparta's efforts to enforce their non-compete/NDAs.  Among other things, Defendants Medidata and Sparta contend that Veeva – by stating that it will defend and indemnify employees in the face of litigation arising from such non-competes – is interfering with these non-competes/NDAs.

135.    The controversy is tied to concrete and justiciable facts involving Veeva's decision to defend and indemnify the following employees:

(a)    As to Medidata: The defense and indemnity of Sondra Pepe, Alan Mateo, and Jason Rizzo.

(b)    As to Sparta: The defense and indemnity of John Marshall.

136.    Veeva reserves the right to seek declaratory relief against IMS with respect to this cause of action in the event that IMS ever challenges Veeva's right to defend and indemnify former IMS employees who face threatened or actual litigation by choosing to work for Veeva.

137.    California Labor Code § 2802 generally states that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct

consequence of the discharge of his or her duties . . . ."  It is well-settled that this provision includes the obligation to indemnify employees for reasonable attorney's fees and costs in the event of litigation arising from conduct in the course and scope of the employee's employment.

138.    Medidata's and Sparta's former employees – by working for Veeva notwithstanding the existence of a non-compete/NDA – act in the course and scope of their employment with Veeva.

139.    Veeva – a California-based employer whose employees enter into employment contracts governed by California law – has an obligation, right, and desire to defend and indemnify its employees when faced with threatened or actual litigation from Defendants arising from a post-termination non-compete agreement.  Medidata and Sparta consider this illegal "interference."

140.    Accordingly, Veeva seeks a declaratory judgment finding that it has the right to defend and indemnify its employees in accordance with the above facts and law.  Ancillary to this declaratory judgment, Veeva further seeks an order enjoining Defendants from taking any action that infringes in any way on this right.

## THIRD CAUSE OF ACTION

### DECLARATORY RELIEF CONCERNING

### DEFENDANTS' NON-COMPETES/NDAS

### (AS TO ALL DEFENDANTS)

141.    An actual case or controversy exists over Defendants' right to require employees to sign non-compete/NDAs that include in their scope the provision of services in California within the meaning California law.  Veeva, as a competitor of Defendants with respect to certain services and products, has an interest in these non-competes/NDAs.  Among other things, these non-compete agreements inhibit Veeva's efforts to recruit, hire, and employ Defendants' current and former employees.

142.    The controversy is tied to concrete and justiciable facts involving Veeva's actual or attempted employment of the following employees.

(a)    As to Medidata: Sondra Pepe, Alan Mateo, and Jason Rizzo.

- 26 -

(b)      As to IMS: Jeffrey Fusco.

(c)      As to Sparta: Sanjay Goswami, John Marshall, and Jane Roe.

143.      Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void. Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

144.      The interests of employees in their own mobility and betterment in providing services in California to a California-based employer are deemed paramount to the competitive business interests of out-of-state employers who seek to prevent competition.  Defendants disagree, and require their employees to sign post-termination non-compete/NDAs that include in their scope California.  This is turn restricts Veeva's ability to recruit and employ the best employees.

145.      Accordingly, Veeva seeks a declaratory judgment ruling that Defendants violate California law when they enter into non-compete/NDAs that include within their scope the provision of services in California to a California-based employer.  Ancillary to this declaratory judgment, Veeva further seeks an order enjoining Defendants from entering into such contracts and requiring Defendants to: (1) modify any existing non-competes/NDAs with employees so that these employees are free to provide services in California to a California-based employer.

## FOURTH CAUSE OF ACTION

### DECLARATORY RELIEF CONCERNING

### ENFORCEABILITY OF NON-COMPETES/NDAS

### (AS TO ALL DEFENDANTS)

146.      An actual case or controversy exists over Defendants' right to seek enforcement of their standard non-compete/NDAs that include in their scope the provision of services in California to a California-based employer.  Such efforts at enforcement include threatened and actual litigation against Veeva for interference with these non-competes/NDAs.  Moreover, as explained above, Veeva also indemnifies its employees when faced with threatened or actual litigation concerning these non-competes/NDAs.  Veeva, as a competitor of Defendants with

- 27 -

respect to certain services and products, has an interest in these non-competes.  Veeva also seeks a declaration of its rights with respect to Defendants as it relates to the threatened or actual enforcement of these non-competes.

147.    The controversy is tied to concrete and justiciable facts involving Veeva's actual or attempted employment of the following employees.

    (a)    As to Medidata: Sondra Pepe, Alan Mateo, and Jason Rizzo.

    (b)    As to IMS: Jeffrey Fusco.

    (c)    As to Sparta: Sanjay Goswami, John Marshall and Jane Roe.

148.     Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void. Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

149.    California has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects.

150.    California employers have a strong and legitimate interest in having broad freedom to choose from a national applicant pool in order to maximize the quality of the product or services they provide.  The State of California has a strong interest in protecting California-based employers and their employees from anti-competitive conduct from out-of-state employers, like Defendants, who would interfere with the freedom of Veeva and its employees.

151.    The interests of employees in their own mobility and betterment in providing services in California to a California-based employer are deemed paramount to the competitive business interests of out-of-state employers who seek to prevent competition.

152.    Defendants threaten to and actually seek to enforce non-competes/NDAs that prohibit Veeva from employing employees to provide services in California.  This violates California law.

153.    Accordingly, Veeva seeks a declaratory judgment finding that Defendants violate California law when they threaten or seek to enforce non-competes/NDAs that prohibit or restrict

employees from providing services in California to Veeva.  Ancillary to this declaratory

judgment, Veeva further seeks an order enjoining Defendants from taking any action to enforce,

whether through litigation threats, court proceedings, or otherwise, a non-compete/NDA that

prevents employees from providing services to Veeva in California within the meaning of

California law.

**FIFTH CAUSE OF ACTION**

**UNFAIR COMPETITION CONCERNING**

**RECRUITMENT OF DEFENDANTS' EMPLOYEES**

154.    Business and Professions Code § 16600 renders every contract in restraint of trade

void.  The Cartwright Act renders any combination in restraint of trade unlawful and void.

Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions

Code § 16600 and the Cartwright Act unfair and unlawful business practices.

155.    California has a strong interest in protecting the freedom of movement of persons

whom California-based employers wish to employ to provide services in California, regardless of

the person's state of residence or precise degree of involvement in California projects.

156.    California employers have a strong and legitimate interest in having broad freedom

to choose from a national applicant pool in order to maximize the quality of the product or

services they provide.  The State of California has a strong interest in protecting California-based

employers and their employees from anti-competitive conduct from out-of-state employers, like

Defendants, who would interfere with the freedom of Veeva and its employees.

157.    Defendants engage in unfair competition when they require employees to enter

into the standard non-compete/NDAs that inhibit Veeva's ability to recruit their employees to

provide services in California to a California employer within the meaning of California law.

158.    Veeva has suffered injury in fact as a result of Defendants' unfair competition.  As

discussed above, Veeva has incurred defense and litigation costs, diverted resources, incurred

recruiting and administrative costs, and spent excessive management and attorney time as a result

of Defendants' unfair competition.  Defendants' conduct must be enjoined.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIXTH CAUSE OF ACTION**

**UNFAIR COMPETITION ARISING FROM**

**DEFENDANTS' NON-COMPETES/NDAS**

159.     Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void. Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

160.     The interests of employees in their own mobility and betterment in providing services in California to a California-based employer are deemed paramount to the competitive business interests of out-of-state employers who seek to prevent competition.

161.     Defendants engage in unfair competition when they enter into post-termination non-compete agreements with employees that include in their scope the provision of services in California for a California-based employer.

162.     As discussed above, Veeva has incurred defense and litigation costs, diverted resources, restricted employment opportunities, incurred recruiting and administrative costs, and spent excessive management and attorney time as a result of Defendants' unfair competition. Defendants' conduct must be enjoined.

**SEVENTH CAUSE OF ACTION**

**UNFAIR COMPETITION ARISING FROM THREATENED OR ACTUAL**

**ENFORCEMENT OF DEFENDANTS' NON-COMPETES/NDAS**

163.     Business and Professions Code § 16600 renders every contract in restraint of trade void.  The Cartwright Act renders any combination in restraint of trade unlawful and void. Business and Professions Code §§ 17200 *et seq.* renders violations of Business & Professions Code § 16600 and the Cartwright Act unfair and unlawful business practices.

164.     California has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects.

- 30 -

165.     California employers have a strong and legitimate interest in having broad freedom to choose from a national applicant pool in order to maximize the quality of the product or services they provide.  The State of California has a strong interest in protecting California-based employers and their employees from anti-competitive conduct from out-of-state employers, like Defendants, who would interfere with the freedom of Veeva and its employees.

166.     The interests of employees in their own mobility and betterment in providing services in California to a California-based employer are deemed paramount to the competitive business interests of out-of-state employers who seek to prevent competition.

167.     Defendants engage in unfair competition when they threaten to or actively seek to enforce their standard non-competes/NDAs that include in their scope the provision of services in California.

168.     Veeva has suffered injury in fact as a result of Defendants unfair competition in this regard.  As discussed above, Veeva has incurred defense and litigation costs as a result of their conduct.  Veeva has also diverted resources and spent valuable management and attorney time in responding to threatened and actual litigation.  Defendants' conduct must be enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     Declaratory judgment.

2.     Appropriate injunctive relief ancillary to the declaratory judgment.

3.     Appropriate negative injunctive relief under California's unfair competition law, including a public injunction prohibiting Defendants from: (1) interfering with the right of California employers to recruit Defendants' current or former employees; (2) including employment pursuant to California law within the scope of their non-compete agreements/NDAs; (3) seeking to enforce such agreements against employees employed in California, including non-residents; and (4) engaging in threatened or actual anti-competitive litigation against California employers arising from the illegal non-competes/NDAs.

4.     Appropriate affirmative injunctive relief under California's unfair competition law, including a public injunction (1) requiring Defendants to rewrite their standard non-

- 31 -

compete/NDAs to exclude employment in California from the agreements' scope; and (2) requiring Defendants to notify all current and former employees of the terms of the Court's injunction.

     5.      An award of reasonable attorneys' fees and costs;

     6.      All such other and further relief that the Court may deem just and proper.

BAKER CURTIS & SCHWARTZ, P.C.

Dated:  January 4, 2018

By: _____
     Chris Baker
     Attorneys for Plaintiff
     VEEVA SYSTEMS, INC.

- 32 -

Exhibit A

# MEDIDATA SOLUTIONS, INC.

## EMPLOYEE CONFIDENTIALITY,
## INVENTION ASSIGNMENT AND NON-COMPETITION AGREEMENT

As a condition of my employment with Medidata Solutions, Inc. ("Medidata"), and in consideration of my employment with Medidata and my receipt of the compensation now and hereafter paid to me by Medidata, I agree to the following:

1.      <u>At-Will Employment</u>. I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH MEDIDATA IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF MEDIDATA. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF MEDIDATA OR MYSELF, WITH OR WITHOUT NOTICE.

2.      <u>Outside Employment.</u> I agree that as a full-time employee of Medidata, Medidata is my sole employer. For the duration of my employment at Medidata, I will disclose, in writing, any additional employment.

3.      <u>Confidential Information.</u>

        a.      <u>Company Information</u>. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of Medidata or any of its subsidiaries (together, the "Company"), or to disclose to any person, firm or corporation without written authorization of the Board of Directors of Medidata, any Confidential Information of the Company. I understand that "Confidential Information" means any Company proprietary information, technical-data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company or to which I have access either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which have become publicly known and generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the Confidential Information.

        b.      <u>Former Employer Information</u>. I agree that I will not, during my employment with Medidata, improperly use or disclose any proprietary information or trade secrets of any former employer or any other person with whom I have had an employment relationship at any time and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity. I represent to Medidata


SCANNED
BY HR

that my execution of this Agreement, my employment with Medidata and the performance of my proposed duties for the Company will not violate any obligations I may have to any such previous employer or other party.

        c.     <u>Third Party Information</u>.  I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

        4.     <u>Inventions.</u>

        a.     <u>Inventions Retained and Licensed</u>.  I have attached hereto, as <u>Exhibit A</u>, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with Medidata (collectively referred to as "Prior Inventions"), which belong to me or any third party and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or machine a Prior Invention or other work performed for the Company, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process, machine or other work.

        b.     <u>Assignment of Inventions</u>.  I agree that I will promptly make full written disclosure to Medidata of any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, demos, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of Medidata and which are related to the Company's business (collectively referred to as "Inventions").  In addition, I agree that I will hold in trust for the sole right and benefit of the Company, and hereby assign and will assign to the Company, or its designee, all my right, title, and interest in and to any and all Inventions which (i) relate to the actual or demonstrably anticipated business of the Company or the actual or demonstrably anticipated research and development of the Company, (ii) result from tasks assigned to me by the Company, or (iii) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contract for by the Company (any such Inventions being "Company-Related Inventions").  I further acknowledge that all original works of authorship which are created by me (solely or jointly with others) within the scope of and during the period of my employment with Medidata and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Company-Related Invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such Company-Related Invention.

c.      Inventions Assigned to the United States.  I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

d.      Maintenance of Records.  I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with Medidata. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

e.      Enforcement of Intellectual Property Rights.  I agree to assist the Company, or its designee, at the Company's expense, to secure, maintain and enforce the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, powers of attorney and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement.  If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to obtain, maintain and enforce the foregoing rights, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such instruments or papers to do all other lawfully permitted acts to obtain, maintain and enforce the foregoing rights with the same legal force and effect as if executed by me.

5.      Competitive Activities.  During the term of my employment with Medidata, and for a period of one (1) year thereafter, regardless of the circumstances of termination, I will not, directly or indirectly, whether as owner, partner, shareholder, consultant, agent, employee, co-venturer or otherwise, engage, participate or invest in any business activity anywhere in the world which develops or markets products or performs services which are competitive with the products or services of the Company (a "Competitor"), including but not limited to any business or entity which develops, markets, manufactures or provides consulting services with respect to data management applications for pharmaceutical, biotechnology and genomic companies.  I will not directly or indirectly, engage or participate in the development of any product or service which the Company has under development or which are the subject of active planning at any time during the term of my employment.  Notwithstanding the foregoing, however, I understand that I may hold stock in a Competitor if the stock is publicly traded and the amount of stock I hold is less than one percent (1%) of the outstanding capital stock of the Competitor.  I understand that the restrictions set forth in this Section 4 are intended to protect the Company's interest in its Confidential Information and established customer relationships and goodwill, and agree that such restrictions are reasonable and appropriate for this purpose.

3

6.     Returning Company Documents. I agree that, at the time of leaving the employ of Medidata, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with Medidata or otherwise belonging to the Company, its successors or assigns including, without limitation, the records maintained pursuant to paragraph 4(d). In the event of the termination of my employment, I agree to sign and deliver to the Company a completed "Termination Certification" attached hereto as Exhibit B.

7.     Notification of New Employer. In the event that I leave the employ of Medidata, I hereby permit the Company to contact my new employer about my rights and obligations under this Agreement. I will inform Medidata of my new employer for this purpose.

8.     Non-Solicitation; Non-Hire. During the term of my employment with Medidata, and for a period of one (1) year thereafter, I will not (a) hire or recruit any current employees or consultants, or former employees of the Company or solicit or encourage, or cause others to solicit or encourage, any employees of the Company to terminate their employment with the Company, or (b) solicit for or on behalf of any person or divert to any person, any employee, customer, client or business opportunity of the Company. Without implied limitation, the foregoing shall include hiring or attempting to hire for or on behalf of any person any officer or other employee or otherwise encouraging any officer or other employee or consultant to terminate his or her relationship with the Company.

9.     Conflict of Interest Guidelines. I agree to diligently adhere to the Conflict of Interest Guidelines attached as Exhibit C hereto.

10.     Representations. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by Medidata. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

11.     Arbitration and Equitable Relief.

a.     Arbitration. EXCEPT AS PROVIDED IN SECTION 11(b) BELOW, I AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING OUT OF OR RELATING TO ANY INTERPRETATION, CONSTRUCTION, PERFORMANCE OR BREACH OF THIS AGREEMENT, SHALL BE SETTLED BY ARBITRATION TO BE HELD IN NEW YORK, NEW YORK, IN ACCORDANCE WITH THE RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION. THE ARBITRATOR MAY GRANT INJUNCTIONS OR OTHER RELIEF IN SUCH DISPUTE OR CONTROVERSY. THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE AND BINDING ON THE PARTIES TO THE ARBITRATION. JUDGMENT MAY BE ENTERED ON THE ARBITRATOR'S DECISION IN ANY COURT HAVING JURISDICTION. THE COMPANY AND I SHALL EACH PAY ONE-HALF OF THE COSTS AND EXPENSES OF SUCH ARBITRATION, AND EACH OF US SHALL SEPARATELY PAY OUR COUNSEL FEES AND EXPENSES.

THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF EMPLOYEE'S RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP (EXCEPT AS PROVIDED IN SECTION 11(b) BELOW), INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS:

      i.     ANY AND ALL CLAIMS FOR WRONGFUL DISCHARGE OF EMPLOYMENT; BREACH OF CONTRACT, BOTH EXPRESS AND IMPLIED; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BOTH EXPRESS AND IMPLIED; NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT OR INTENTIONAL MISREPRESENTATION; NEGLIGENT OR INTENTIONAL INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE; AND DEFAMATION;

      ii.     ANY AND ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE OR MUNICIPAL STATUTE, INCLUDING, BUT NOT LIMITED TO, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE FAIR LABOR STANDARDS ACT; AND

      iii.     ANY AND ALL CLAIMS ARISING OUT OF ANY OTHER LAWS AND REGULATIONS RELATING TO EMPLOYMENT OR EMPLOYMENT DISCRIMINATION.

      b.     <u>Equitable Remedies</u>. I AGREE THAT IT WOULD BE IMPOSSIBLE OR INADEQUATE TO MEASURE AND CALCULATE THE COMPANY'S DAMAGES FROM ANY BREACH OF THE COVENANTS SET FORTH IN SECTIONS 2, 3, 4, AND 7 HEREIN. ACCORDINGLY, I AGREE THAT IF I BREACH ANY OF SUCH SECTIONS, THE COMPANY WILL HAVE AVAILABLE, IN ADDITION TO ANY OTHER RIGHT OR REMEDY AVAILABLE, THE RIGHT TO OBTAIN AN INJUNCTION FROM A COURT OF COMPETENT JURISDICTION RESTRAINING SUCH BREACH OR THREATENED BREACH AND TO SPECIFIC PERFORMANCE OF ANY SUCH PROVISION OF THIS AGREEMENT. I FURTHER AGREE THAT NO BOND OR OTHER SECURITY SHALL BE REQUIRED IN OBTAINING SUCH EQUITABLE RELIEF AND I HEREBY CONSENT TO THE ISSUANCE OF SUCH INJUNCTION AND TO THE ORDERING OF SPECIFIC PERFORMANCE.

      c.     <u>Consideration</u>. I UNDERSTAND THAT EACH PARTY'S PROMISE TO RESOLVE CLAIMS BY ARBITRATION IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT, RATHER THAN THROUGH THE COURTS, IS CONSIDERATION FOR OTHER PARTY'S LIKE PROMISE. I FURTHER UNDERSTAND THAT I AM OFFERED EMPLOYMENT IN CONSIDERATION OF MY PROMISE TO ARBITRATE CLAIMS.

12.    General Provisions.

a.    Governing Law; Consent to Personal Jurisdiction.  This Agreement will be governed and construed according to the laws of the State of New York without giving effect to its conflict of laws principles.  I hereby expressly consent to the personal jurisdiction of the state and federal courts located in New York for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

b.    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or agreements between us.  No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

c.    Severability.  In the event that any provision or portion of a provision of this Agreement shall be determined to be illegal, invalid or unenforceable, the remainder of this Agreement shall be enforced to the fullest extent possible and the illegal, invalid or unenforceable provision or portion of a provision will be amended by a court of competent jurisdiction, or otherwise thereafter shall be interpreted, to reflect as nearly as possible without being illegal, invalid or unenforceable the parties' intent if possible.  In the event that any provision or portion of a provision of this Agreement is determined by any court of competent jurisdiction to be unenforceable by reason of excessive scope as to geographic, temporal, or functional coverage, such provision or portion of a provision shall be deemed to extend only over the maximum geographic, temporal, and functional scope as to which it may be enforceable. If such amendment or interpretation is not possible, the illegal, invalid or unenforceable provision or portion of a provision will be severed from the remainder of this Agreement and the remainder of this Agreement shall be enforced to the fullest extent possible as if such illegal, invalid or unenforceable provision or portion of a provision was not included.

d.    Successors and Assigns.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Date: _8-15-04_____

_____
(Employee's Signature)

_Jason M. Rizzo_____
(Type/Print Employee's Name)

Exhibit B

### MEDIDATA SOLUTIONS, INC.

### EMPLOYEE CONFIDENTIALITY,
### INVENTION ASSIGNMENT AND NON-COMPETITION AGREEMENT

As a condition of my employment with Medidata Solutions, Inc., for the benefit of itself and of each of subsidiaries now or hereafter formed (collectively, as to all such entities, "Medidata") and in consideration of my employment with Medidata and my receipt of the compensation now and hereafter paid to me by Medidata, I agree to the following:

1.    At-Will Employment. I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH MEDIDATA IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF MEDIDATA. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF MEDIDATA OR MYSELF, WITH OR WITHOUT NOTICE.

2.    Outside Employment. I agree that as a full-time employee of Medidata, Medidata is my sole employer. For the duration of my employment at Medidata, I will disclose, in writing, any additional employment.

3.    Confidential Information.

a.    Company Information. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of Medidata or any of its subsidiaries (together, the "Company"), or to disclose to any person, firm or corporation without written authorization of the Board of Directors of Medidata, any Confidential Information of the Company. I understand that "Confidential Information" means any Company proprietary information, technical-data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company or to which I have access either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the Confidential Information.

b.    Former Employer Information. I agree that I will not, during my employment with Medidata, improperly use or disclose any proprietary information or trade secrets of any former employer or any other person with whom I have had an employment relationship at any time and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or

entity unless consented to in writing by such employer, person or entity. I represent to Medidata that my execution of this Agreement, my employment with Medidata and the performance of my proposed duties for the Company will not violate any obligations I may have to any such previous employer or other party.

      c.     Third Party Information. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

      4.     Inventions.

      a.     Inventions Retained and Licensed. I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with Medidata (collectively referred to as "Prior Inventions"), which belong to me or any third party and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or machine a Prior Invention or other work performed for the Company, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process, machine or other work.

      b.     Assignment of Inventions. I agree that I will promptly make full written disclosure to Medidata of any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, demos, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of Medidata and which are related to the Company's business (collectively referred to as "Inventions"). In addition, I agree that I will hold in trust for the sole right and benefit of the Company, and hereby assign and will assign to the Company, or its designee, all my right, title, and interest in and to any and all Inventions which (i) relate to the actual or demonstrably anticipated business of the Company or the actual or demonstrably anticipated research and development of the Company, (ii) result from tasks assigned to me by the Company, or (iii) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contract for by the Company (any such Inventions being "Company-Related Inventions"). I further acknowledge that all original works of authorship which are created by me (solely or jointly with others) within the scope of and during the period of my employment with Medidata and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Company-Related Invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such Company-Related Invention.

c.      Inventions Assigned to the United States.  I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

d.      Maintenance of Records.  I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with Medidata. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

e.      Enforcement of Intellectual Property Rights.  I agree to assist the Company, or its designee, at the Company's expense, to secure, maintain and enforce the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, powers of attorney and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to obtain, maintain and enforce the foregoing rights, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such instruments or papers to do all other lawfully permitted acts to obtain, maintain and enforce the foregoing rights with the same legal force and effect as if executed by me.

5.      Competitive Activities.  THIS SECTION 5 SHALL HAVE NO FORCE OR EFFECT, AND SHALL NOT BE DEEMED A PART OF THE AGREEMENT DURING ANY AND ALL PERIODS IN WHICH I PERFORM SERVICES AS AN EMPLOYEE OF MEDIDATA PRINCIPALLY IN THE STATE OF CALIFORNIA, BUT SHALL BECOME IMMEDIATELY EFFECTIVE IF AND TO THE EXTENT I PERFORM SERVICES AS AN EMPLOYEE OF MEDIDATA PRINCIPALLY IN A JURISDICTION OTHER THAN THE STATE OF CALIFORNIA. During the term of my employment with Medidata, and for a period of one (1) year thereafter, regardless of the circumstances of termination, I will not, directly or indirectly, whether as owner, partner, shareholder, consultant, agent, employee, co-venturer or otherwise, engage, participate or invest in any business activity anywhere in the world which develops or markets products or performs services which are competitive with the products or services of the Company (a "Competitor"), including but not limited to any business or entity which develops, markets, manufactures or provides consulting services with respect to data management applications for pharmaceutical, biotechnology and genomic companies. I will not directly or indirectly, engage or participate in the development of any product or service which the Company has under development or which are the subject of active planning at any time during the term of my employment. Notwithstanding the foregoing, however, I understand that I may hold stock in a Competitor if the stock is publicly traded and the amount of stock I hold is less than one percent (1%) of the outstanding capital stock of the Competitor. I understand that



the restrictions set forth in this Section 5 are intended to protect the Company's interest in its Confidential Information and established customer relationships and goodwill, and agree that such restrictions are reasonable and appropriate for this purpose.

6.      Returning Company Documents. I agree that, at the time of leaving the employ of Medidata, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with Medidata or otherwise belonging to the Company, its successors or assigns including, without limitation, the records maintained pursuant to section 4(d). In the event of the termination of my employment, I agree to sign and deliver to the Company a completed "Termination Certification" attached hereto as Exhibit B.

7.      Notification of New Employer. In the event that I leave the employ of Medidata, I hereby permit the Company to contact my new employer about my rights and obligations under this Agreement. I will inform Medidata of my new employer for this purpose.

8.      Non-Solicitation; Non-Hire. During the term of my employment with Medidata, and for a period of one (1) year thereafter, I will not (a) hire or recruit any current employees or consultants, or former employees of the Company or solicit or encourage, or cause others to solicit or encourage, any employees of the Company to terminate their employment with the Company, or (b) solicit for or on behalf of any person or divert to any person, any employee, customer, client or business opportunity of the Company. Without implied limitation, the foregoing shall include hiring or attempting to hire for or on behalf of any person any officer or other employee or otherwise encouraging any officer or other employee or consultant to terminate his or her relationship with the Company.

9.      Conflict of Interest Guidelines. I agree to diligently adhere to the Conflict of Interest Guidelines attached as Exhibit C hereto.

10.     Representations. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by Medidata. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

11.     Arbitration and Equitable Relief.

a.      Arbitration. EXCEPT AS PROVIDED IN SECTION 11(b) BELOW, I AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING OUT OF OR RELATING TO ANY INTERPRETATION, CONSTRUCTION, PERFORMANCE OR BREACH OF THIS AGREEMENT, SHALL BE SETTLED BY ARBITRATION TO BE HELD IN NEW YORK, NEW YORK, IN ACCORDANCE WITH THE RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION. THE ARBITRATOR MAY GRANT INJUNCTIONS OR OTHER RELIEF IN SUCH DISPUTE OR CONTROVERSY. THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE AND BINDING ON

ss1007-mio0108                          4                              _____ initials

THE PARTIES TO THE ARBITRATION. JUDGMENT MAY BE ENTERED ON THE ARBITRATOR'S DECISION IN ANY COURT HAVING JURISDICTION. THE COMPANY AND I SHALL EACH PAY ONE-HALF OF THE COSTS AND EXPENSES OF SUCH ARBITRATION, AND EACH OF US SHALL SEPARATELY PAY OUR COUNSEL FEES AND EXPENSES.

THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF EMPLOYEE'S RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP (EXCEPT AS PROVIDED IN SECTION 11(b) BELOW), INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS:

i.     ANY AND ALL CLAIMS FOR WRONGFUL DISCHARGE OF EMPLOYMENT; BREACH OF CONTRACT, BOTH EXPRESS AND IMPLIED; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BOTH EXPRESS AND IMPLIED; NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT OR INTENTIONAL MISREPRESENTATION; NEGLIGENT OR INTENTIONAL INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE; AND DEFAMATION;

ii.    ANY AND ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE OR MUNICIPAL STATUTE, INCLUDING, BUT NOT LIMITED TO, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE FAIR LABOR STANDARDS ACT; AND

iii.   ANY AND ALL CLAIMS ARISING OUT OF ANY OTHER LAWS AND REGULATIONS RELATING TO EMPLOYMENT OR EMPLOYMENT DISCRIMINATION.

b.     <u>Equitable Remedies</u>.  I AGREE THAT IT WOULD BE IMPOSSIBLE OR INADEQUATE TO MEASURE AND CALCULATE THE COMPANY'S DAMAGES FROM ANY BREACH OF THE COVENANTS SET FORTH IN SECTIONS 2, 3, 4, 5, 6 AND 8 HEREIN.  ACCORDINGLY, I AGREE THAT IF I BREACH ANY OF SUCH SECTIONS, THE COMPANY WILL HAVE AVAILABLE, IN ADDITION TO ANY OTHER RIGHT OR REMEDY AVAILABLE, THE RIGHT TO OBTAIN AN INJUNCTION FROM A COURT OF COMPETENT JURISDICTION RESTRAINING SUCH BREACH OR THREATENED BREACH AND TO SPECIFIC PERFORMANCE OF ANY SUCH PROVISION OF THIS AGREEMENT. I FURTHER AGREE THAT NO BOND OR OTHER SECURITY SHALL BE REQUIRED IN OBTAINING SUCH EQUITABLE RELIEF AND I HEREBY CONSENT TO THE ISSUANCE OF SUCH INJUNCTION AND TO THE ORDERING OF SPECIFIC PERFORMANCE.

c.     <u>Consideration</u>.  I UNDERSTAND THAT EACH PARTY'S PROMISE TO RESOLVE CLAIMS BY ARBITRATION IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT, RATHER THAN THROUGH THE COURTS, IS CONSIDERATION FOR OTHER PARTY'S LIKE PROMISE. I FURTHER UNDERSTAND THAT I AM OFFERED EMPLOYMENT IN CONSIDERATION OF MY PROMISE TO ARBITRATE CLAIMS.

General Provisions.

   d. <u>Governing Law; Consent to Personal Jurisdiction</u>.  This Agreement will be governed and construed according to the laws of the State of New York without giving effect to its conflict of laws principles.  I hereby expressly consent to the personal jurisdiction of the state and federal courts located in New York for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

   e. <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or agreements between us.  No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

   f. <u>Severability</u>.  In the event that any provision or portion of a provision of this Agreement shall be determined to be illegal, invalid or unenforceable, the remainder of this Agreement shall be enforced to the fullest extent possible and the illegal, invalid or unenforceable provision or portion of a provision will be amended by a court of competent jurisdiction, or otherwise thereafter shall be interpreted, to reflect as nearly as possible without being illegal, invalid or unenforceable the parties' intent if possible.  In the event that any provision or portion of a provision of this Agreement is determined by any court of competent jurisdiction to be unenforceable by reason of excessive scope as to geographic, temporal, or functional coverage, such provision or portion of a provision shall be deemed to extend only over the maximum geographic, temporal, and functional scope as to which it may be enforceable. If such amendment or interpretation is not possible, the illegal, invalid or unenforceable provision or portion of a provision will be severed from the remainder of this Agreement and the remainder of this Agreement shall be enforced to the fullest extent possible as if such illegal, invalid or unenforceable provision or portion of a provision was not included.

   g. <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Date: _March 13, 2008_

_Sondra A. Pepe_
(Employee's Signature)

_Sondra A. Pepe_
(Type/Print Employee's Name)

Exhibit C

## Confidentiality & Policy Agreement

Employee Number:_____

_Jeffrey_        _S_        _Fusco_
_____    _____    _____
(First Name)         (Middle Initial)         (Last Name)

I agree to accept employment with IMS Health Incorporated ("IMS"), subject to the following terms and conditions:

### 1. Confidentiality and Security

I will not disclose confidential information of IMS, or any company controlling, controlled by or under common control with IMS, (collectively the "IMS Companies") to anyone outside of the IMS Companies except as specifically described below; neither will I use such information for my own personal benefit. Confidential information may only be disclosed to someone outside of the IMS Companies if it is (a) to further a legitimate business purpose of the IMS Companies, and (b) disclosed after the intended recipient has signed an IMS approved agreement containing the appropriate confidentiality provisions. In addition, I agree to make every reasonable effort to (a) ensure the confidentiality and integrity of confidential information of IMS and (b) protect it against reasonably anticipated threats or hazards to its security or integrity.

"Confidential information," as referred to here, means information not generally known outside the IMS Companies. Examples of confidential information include, but are not limited to, non-public:

- technical knowledge of methodologies, computer programs, and work processes of any of the IMS Companies;

- business information regarding costs, profits, sales, licensing arrangements, markets, and customer lists of any of the IMS Companies;

- knowledge of future activities within any of the IMS Companies, such as products or services in research and development or marketing plans;

- data obtained from sources outside the IMS Companies or created by any of the IMS Companies; and

- information provided to IMS by a third party which IMS has agreed to keep confidential.

### 2. Ownership of Work

I will promptly disclose in writing to IMS all inventions, discoveries, developments, improvements and innovations (collectively referred to as "Inventions") that I have conceived or made during my employment with IMS. In this context, Inventions are limited to those which:

- relate in any manner to the existing or contemplated business or research activities of any of the IMS Companies;

- are suggested by or result from my work at IMS; or

- result from the use of IMS's time, materials or facilities.

All Inventions will be IMS's property rather than mine. Should IMS request it, I agree to sign any document that IMS may reasonably require to establish ownership in any Invention.

### 3. Agreement Not to Compete

During the term of my employment with IMS, I agree I will not, without the prior written consent of IMS, manage, operate, join, control or participate in the ownership, management, operation or control of or engage in any business or perform any service directly or indirectly in competition, anywhere in the United States or Canada, with the products and services of the IMS Companies, or have any direct or indirect interest, whether as a proprietor, partner, director, officer, employee, creditor, stockholder, consultant or in any other capacity whatsoever, in any enterprise in competition, anywhere in the United States or

Canada, with the products and services of the IMS Companies. Ownership by me of less than two percent (2%) of the issued and outstanding shares of capital stock of any company listed on a national securities exchange or quoted by the National Association of Securities Dealers Automated Quotation System shall not be deemed to be competitive hereunder. The terms set forth in this paragraph shall remain in effect after termination of this Agreement in accordance with the following: (1) if my term of employment with IMS is less than ninety days, my agreement not to compete shall survive termination for a period of six months, and (2) if my term of employment with IMS is ninety days or more, my agreement not to compete shall survive termination for a period of twelve months. In the event I enter into an agreement with an IMS Company subsequent to the date below, which agreement restricts me from competing with one or more of the IMS Companies (the "Subsequent Agreement"), the Subsequent Agreement shall control over the terms of this Paragraph to the extent there is any difference in the terms of the respective agreements.

**4. Agreement Not to Solicit IMS Employees**
During the term of my employment with IMS and for a period of one year thereafter, I agree I will not (1) solicit, hire or retain as an employee or independent contractor, or (2) assist any third party in the solicitation, hire, or retention as an employee or independent contractor, any person who during the previous twelve months was an employee of any of the IMS Companies.

**5. No Breach of Other Agreements**
My employment by IMS will not result in a breach of or a default under, any term or provision of any contract or agreement between me and any other person, company or other entity. For example, I am not subject to any agreement which could reasonably be interpreted to restrict or prohibit my employment with IMS.

**6. Return of Materials**
Upon IMS's request and as directed by IMS, I will promptly return to IMS or destroy all company materials that came into my possession, custody or control in connection with my employment with IMS. The term "materials" includes, but is not limited to, all notes, correspondence, reports, computer programs, customer lists, data, manuals, presentations, and contracts which in any way relates to IMS's business, and any confidential information referred to in Paragraph 1 of this agreement. Upon leaving IMS's employ, I will promptly return or destroy, as directed by IMS, all such materials without retaining any copies.

**7. Employment Status**
Nothing in this agreement shall be construed as constituting a contract for employment, or otherwise set forth a length of employment. Both IMS and I have the right to terminate the employment relationship at any time with or without cause. No representative of IMS has authority to enter into an agreement for employment for any specified period of time, or to make an agreement contrary to this paragraph.

**8. Miscellaneous**
I acknowledge and agree that a breach by me of the provisions of this Agreement will cause the IMS Companies irreparable injury and damage which may not be compensable by money damages and, therefore, I acknowledge and agree the affected IMS Companies shall be entitled to injunctive or other relief to prevent a breach of such provisions and to secure its enforcement in addition to any other remedies which may be available to the IMS Companies. Should any of the provisions of this Agreement be held invalid or unenforceable, such portion shall be severed and the remaining portions of the covenants shall remain valid and enforceable. In the event that a court of competent jurisdiction determines by final judgment that the scope, time period, and/or geographical limitations of the covenants set forth in this Agreement are too broad to be capable of enforcement, said court is authorized to modify said covenants and enforce such provisions as to scope, time and geographical area as the court deems equitable.

I have read and understand this Confidentiality & Policy Agreement, and in consideration of my employment in any capacity with IMS, and of the salary or wages paid for my services in the course of such employment, I agree to abide by the above requirements of IMS.

_____8/11/2014_____          _____
(date)                                            (signature)

Exhibit D



**SPARTA SYSTEMS, INC.**

**EMPLOYEE COVENANTS AGREEMENT**

I am about to become a paid employee of Sparta Systems, Inc. (the "Company").  I am making this Agreement in consideration of my employment by the Company, and the compensation and benefits afforded to me in connection with that employment.

    1.  <u>Confidentiality</u>.  While working for the Company, I may develop or acquire knowledge in my work or from my colleagues or others of Confidential Information relating to the Company, its business, potential business or that of its customers or its or their respective affiliates. "<u>Confidential Information</u>" includes all trade secrets, know-how, show-how, technical, operating, financial, and other business information and materials, whether or not reduced to writing or other medium and whether or not marked or labeled confidential, proprietary or the like, specifically including, but not limited to, information regarding source codes, software programs, computer systems, logos, designs, graphics, writings or other materials, algorithms, formulae, works of authorship, techniques, documentation, models and systems, sales and pricing techniques, procedures, inventions, products, improvements, modifications, methodology, processes, concepts, records, files, memoranda, reports, plans, proposals, price lists, customer and supplier lists, and customer and supplier information.  Confidential Information does not include general skills, experience or information that is generally available to the public, other than information which has become generally available as a result of my direct or indirect act or omission.

        With respect to Confidential Information of the Company, its customers and its or their respective affiliates, I agree that:

        (a)  I will use it only in the performance of my duties for the Company.  I will not use it at any time (during or after my employment) for my personal benefit, for the benefit of any other person or firm, or in any manner adverse to the interests of the Company or its affiliates;

        (b)  I will not disclose it at any time (during or after my employment) except to authorized Company personnel, unless the Company expressly consents in advance in writing or unless the information becomes clearly of public knowledge or enters the public domain (other than through an unauthorized disclosure by me or through a disclosure not by me which I knew or reasonably should have known was an unauthorized disclosure);

        (c)  I will safeguard it by all reasonable steps and abide by all policies and procedures of the Company and its customers in effect from time to time regarding storage, copying, destroying, publication or posting, or handling of such Confidential Information, in whatever medium or format that Confidential Information takes;

        (d)  I will execute and abide by all confidentiality agreements which the Company reasonably requests me to sign or abide by, whether those agreements are for the benefit of the Company, an affiliate or an actual or a potential customer thereof; and

**Sparta Systems**

(e)  I will return all materials containing or relating to Confidential Information, together with all other Company or customer property (including, without limitation, laptop computers, cell phones and other equipment) to the Company, when my employment with the Company terminates or otherwise on demand and, at that time I will certify to the Company, in writing, that I have complied with this Agreement. I shall not retain any copies or reproductions of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents relating in any way to the affairs of Company, its customers or its or their respective affiliates.

2.  Contributions and Inventions.  While employed by the Company, I may make Contributions and Inventions of value to it.  The terms "Contributions" and "Inventions" are understood to include all inventions, ideas, formulae, works, modifications, processes, discoveries, techniques, designs, methods, trade secrets, technical specifications and data, know-how, show-how, concepts, expressions, creations, improvements, works of authorship, ideas and other developments, whether or not they are patentable or copyrightable or subject to analogous protection and regardless of their form or state of development, and whether or not I have made them alone or with others.

This Agreement covers Contributions and Inventions of any kind that are conceived or made by me, during hours that I am working for the Company at my place of work whether located at the Company, customer facilities, at home or elsewhere, alone or with others, while I am employed by the Company.  This Agreement also covers Contributions and Inventions, regardless of whether they are conceived or made during regular working hours or at my place of work, (i) that relate to the Company's business or potential business, or (ii) result from tasks assigned to me by the Company, or (iii) that are conceived or made with the use of the Company's time, facilities, materials or resources.  With respect to Contributions or Inventions covered by this Agreement, I agree that:

(a)  I will disclose them promptly to the Company.  I will not disclose them to anyone other than authorized Company personnel;

(b)  They will belong solely to the Company from conception as "works made for hire" (as that terms is used under U.S. copyright law) or otherwise. To the extent that title to any such Contributions or Inventions do not, by operation of law, vest in the Company, I hereby irrevocably assign to the Company all right, title and interest, including, without limitation, tangible and intangible rights such as patent rights, trademarks and copyrights, that I may have or may acquire in and to all such Contribution and Inventions, benefits and/or rights resulting therefrom, and agree to promptly execute any further specific assignments related to such Contributions or Inventions, benefits and/or rights at the request of the Company.

(c)  I will, at any time, either during the time I am employed or thereafter, assist the Company in obtaining and maintaining patent, copyright, trademark, mask works and other appropriate protection for them in all countries, at the Company's expense.  In the event that the Company is unable to secure my signature after reasonable effort in connection with any patent, trademark, copyright, mask work or other similar protection relating to a Contribution or an Invention, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in fact, to act for an on my behalf and stead to execute and

**Sparta Systems**

file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of patents, trademarks, copyrights, mask works or other similar protection thereon with the same legal force and effect as if executed by me.

(d)   Any Contributions or Inventions relating to the business of the Company and disclosed to the Company within 6 months following the termination of my employment shall be deemed to fall within the provisions of this Section 2.  The "business of the Company" as used in this Section 2 includes the actual business conducted by the Company at any time during my employment with the Company, as well as any business in which the Company, at any time during my employment with the Company, proposed or proposes to engage.

3.   <u>Obligations to Prior Employers or Others</u>.  Except for those described below (if any), I do not have any non-disclosure, non-compete or other obligations to any previous employer or other person or entity that would conflict with my obligations under this Agreement or the performance of my duties for the Company.  I have previously provided copies of each of the agreements described below, if any, to the Company.  I shall not disclose to the Company or its customers or induce or cause the Company or its customers to use any secret or confidential information or material belonging to others, including my former employers, if any.

LIST ANY EXCEPTIONS:_____

_____

_____

_____

4.   <u>Excluded Information</u>.  A complete list, by non-confidential descriptive title of all Inventions, ideas, reports and other creative works, if any, made or conceived by me prior to my employment by the Company, and intended to be excluded from this Agreement, is set forth below. I will not assert any rights under any Inventions as having been made or acquired by me prior to my being employed by Company, unless such inventions are identified below.

LIST ANY EXCEPTIONS:_____

_____

_____

_____

5.   <u>Covenants Against Solicitation and Competition</u>.

(a)   I agree that during the course of my employment with the Company and for a period of nine (9) months following the termination of my employment with the Company (for any reason or no reason) (the "Restricted Period"), I will not, without the express prior written consent of the Company, anywhere, either directly or indirectly, whether alone or as an owner, shareholder, partner, member, joint venturer, officer, director, consultant, independent contractor agent, employee or otherwise of any company or other business enterprise, assist in, engage in or otherwise be connected to or benefit from any business competitive with that of the Company.  A "business competitive with that of the Company" is (i) a software company, consultant or

Sparta Systems

developer that sells, licenses or otherwise offers a software program or other products or services related to Quality Management and/or Quality Assurance and/or Quality Control functionality, particularly and/or the customer's or company's compliance with its regulatory requirements; or (ii) one that engages in or provides or intends to engage in or provide any products, services or other business which is of the same nature as a product, service or other business of the Company or a product, service or other business which the Company was developing during the period of my employment and of which I have knowledge or reasonably should have had knowledge. A list of Company's current competitors is attached hereto as Exhibit A. Notwithstanding the foregoing, nothing herein shall be deemed to prohibit my ownership of less than 2% of the outstanding shares of any publicly traded corporation that conducts a business competitive with that of the Company. In addition, I shall not, either directly or indirectly, whether alone or as an owner, shareholder, partner, member, joint venturer, officer, director, consultant, independent contractor agent, employee or otherwise of any company or other business enterprise, assist in, engage in or otherwise be connected to a customer of the Company or any pharmaceutical, biotechnology, food, medical device or consumer packaged goods company, in any capacity relating to such customer's or company's Quality Management and/or Quality Assurance and/or Quality Control functions, and/or the customer's or company's compliance with its regulatory requirements, where such customer or company is already using Company's products and/or services, or are contemplating of procuring and using such products and/or services. The above limitation shall apply globally since the Company's operation are global in nature, and the Confidential Information I may review may be used to develop business globally.

(b)     I further agree that, during the Restricted Period, I will not, without the express prior written consent of the Company, directly or indirectly: (i) contact, communicate, solicit, transact business with or perform services for (or assist any third party in contacting, communicating, soliciting, transacting business with or performing any services for) any person or entity that is or was (at any time within 12 months prior to the contact, communication, solicitation, transaction of business, or performance of services), a customer or prospective customer (as defined below) of the Company; (ii) solicit, recruit, hire, engage, or refer (or assist any third party in soliciting, recruiting, hiring, engaging or referring) any person or entity who or which either is, or during the twelve (12) months immediately preceding the termination of my employment was, an employee, agent, consultant or independent contractor of the Company; or (iii) interfere with, disrupt or attempt to interfere with or disrupt the relationship, contractual or otherwise, between the Company and any of its customers, suppliers, lessors, independent contractors, agents or employees. A "prospective customer" is any individual or entity with respect to whom or which the Company was engaged in a solicitation at any during the twelve (12) months preceding the termination of my employment with the Company and in which solicitation I was in any way involved or otherwise had knowledge of or reasonably should have had knowledge of.

6.  Non-Disparagement.  I will not at any time (during or after my employment with the Company) disparage the reputation of the Company, its customers and its or their respective affiliates or any of its or their respective officers, directors, employees or agents.

7.  Interpretation and Scope of this Agreement.

# Sparta Systems

(a) Each provision of this Agreement will be interpreted on its own. If any provision is held to be unenforceable by a court of competent jurisdiction as written, then such provision shall be deemed limited and restricted to the extent that the court shall deem the provision to be enforceable. The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provision hereof. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. If it is ever held that any restriction hereunder is too broad to permit enforcement of such restriction to its fullest extent, such restriction shall be enforced to the maximum extent permitted by applicable law.

(b) I understand and agree that if I breach or threaten to breach any of the provisions of this Agreement, including without limitation the provisions of Sections 1, 2, 5 or 6 hereof, the Company would suffer irreparable harm and damages would be an inadequate remedy. Accordingly, I acknowledge that Company shall be entitled to temporary, preliminary and permanent injunctive or other equitable relief in any court of competent jurisdiction (without being obligated to post a bond or other collateral) and to an equitable accounting of all earning, profits and other benefits arising, directly or indirectly, from such violation, which rights shall be cumulative and in addition to (rather than instead of) any other rights or remedies to which the Company may be entitled at law or in equity. In addition (and not instead of those rights), I further covenant that I shall be responsible for payment of the fees and expenses of Company's attorneys and experts, as well as Company's court costs, pertaining to any suit, arbitration, mediation, action or other proceeding (including the costs of any investigation related thereto) arising directly or indirectly out of my violation or threatened violation of any of the provisions of this Agreement.

(c) The provisions of this Agreement shall constitute the entire agreement of the Company and I with respect to the matters covered hereby and shall supersede all previous written, oral or implied understandings with respect to such matters.

(d) Any and all actions, claims or controversies arising directly or indirectly out of this Agreement, including, without limitation, tort claims, shall be governed and construed by the laws of the State of New Jersey, without reference to the choice of laws provisions thereof. Any and all actions arising directly or indirectly out of this Agreement or my employment by the Company shall be brought and heard in the state and federal courts of the State of New Jersey and I hereby irrevocably submit to the exclusive jurisdiction of any such courts. **The Company and I hereby agree to waive our respective rights to a trial by jury.**

(e) This Agreement shall be binding upon me and my executors, heirs and assigns and shall inure to the benefit of the Company, its affiliates and their respective successors and assigns (including, without limitation, a purchaser of all or substantially all of the assets of the Company or its affiliates).

(f) I acknowledge and agree that the restrictions on the activities in which I may engage that are set forth in Sections 1, 2, 5 and 6 of this Agreement and the location and period of time for which such restrictions apply are reasonable and necessary to protect the Company's

# Sparta Systems

legitimate business interests and shall survive the termination of my employment.  I understand that the Company's business is global and, accordingly, the restrictions cannot be limited to any particular geographic area.  I further acknowledge that the restrictions contained in this Agreement will not prevent me from earning a livelihood.

(g)    Nothing contained in this Agreement shall give me any right to continue to be employed by the Company.  The Company shall have the right to terminate my employment at any time, with or without cause or notice and no one at the Company has made any other representations to me with respect thereto.

**I represent and warrant that: (a) I have read this Agreement and understand all the terms and conditions hereof, (b) I have entered into this Agreement of my own free will and volition, (c) I have been advised by the Company that this Agreement is a legally binding contract and that I should seek my own independent attorney to review it, (d) I have been afforded ample opportunity to consult with my own attorney regarding this Agreement, and (e) the terms of this Agreement are fair, reasonable and are being agreed to voluntarily in exchange for my employment or continued employment by the Company.**

_____
[Employee Name]

_____
Employee Signature

Date:_____

Accepted:
Sparta Systems, Inc.


By:_____
    Sharon G. Marnien

 Sparta Systems

# SPARTA SYSTEMS, INC.
## COMPETITOR LIST[1]
### (as of April 2013)

1. MasterControl
2. EtQ
3. Pilgrim Software
4. AssurX
5. MetricStream
6. NextDocs
7. Intelex
8. Xybion
9. CMO Compliance
10. Qumas
11. IBS
12. SAP (those parts that compete)
13. Oracle (those parts that compete)
14. Agile PLM
15. Matrix 1
16. Compliance 360
17. ExtraView
18. IQS
19. Solabs
20. Q-Pulse

---

[1] This listing represents Sparta Systems, Inc. competitors as of the date specified in the document header. Sparta Systems, in its sole discretion, may edit or add to this list at any time based on changes in the competitive landscape.

1                               **PROOF OF SERVICE**

2       I am a resident of the State of California, over the age of eighteen years, and not a party to

3 the within action.   My business address is 44 Montgomery Street, Suite 3520, San Francisco,

4 California 94104.  On January 4, 2018, I served the following document(s):

5                          **FIRST AMENDED COMPLAINT**

6

7 by facsimile transmission on that date.  This document was transmitted by using a facsimile machine that complies with California Rules of Court Rule 2003(3). The transmission was reported as complete and without error.  The names and facsimile numbers of the person(s)

8 served are as set forth below.

9 by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully

10 prepaid for deposit in the United States mail at San Francisco, California addressed as set

11 forth below.

12 by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for

13 overnight delivery, and addressed as set forth below.

14 by personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

15

16                 Sydney Ward                       Claudia Ray

17            Marissa M. O'Connor                Joseph Loy
               Marcia L. Pope                  Bonnie Jarrett

18    Pillsbury Winthrop Shaw Pittman LLP        Kirkland & Ellis LLP
     2600 Capitol Avenue, Suite 300          601 Lexington Ave.

19        Sacramento, CA 95816-5930          New York, NY 10022
   **Counsel for Quintiles IMS Incorporated**   **Counsel for Medidata Solutions, Inc.**

20      **and IMS Software Services, Ltd.**

21

22             James T. Hultquist
             Jillian Burstein

23                Reed Smith
        10 South Wacker Drive

24         Chicago, IL 60606-7507
     **Counsel for Sparta Systems, Inc.**

25

26

27

28

1

2

3

4

☑   Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses on the below service list on the following date/time January 4, 2018 at 12:05 pm. Pacific.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.  The electronic notification address of the person making the service is dschwartz@bakerlp.com.

5

6

7

**Counsel for Quintiles IMS Incorporated and
IMS Software Services, Ltd.**
IQVIA-Veeva@pillsburylaw.com

8

9

**Counsel for Medidata Solutions, Inc.**
Medidata-Veeva@kirkland.com

10

11

**Counsel for Sparta Systems, Inc.**
JHultquist@ReedSmith.com
jburstein@reedsmith.com

12

13

14

15

16

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service.  Under that practice, it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

17

18

19

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on January 4, 2018, at San Francisco, California.

20

21

_____
                                    Deborah Schwartz

22

23

24

25

26

27

28